**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 13, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: MS55, INC.,

Debtor.

------------------------

JEFFREY HILL, Trustee,

Appellant,

v.

AKAMAI TECHNOLOGIES, INC., a
Delaware corporation,

Appellee.

No. 05-1389

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 04-cv-02698-EWN)**

---

D. Bruce Coles, Fish & Coles, Denver, Colorado, for Plaintiff-Appellant.

Bart B. Burnett, Pearson, Horowitz, & Burnett, P.C. (Robert M. Horowitz,
Pearson, Horowitz, & Burnett, P.C., Denver, Colorado, and George B. Hofmann,
Parsons Kinghorn Harris, P.C., Salt Lake City, Utah, with him on the brief),
Denver, Colorado, for Defendant-Appellee.

---

Before **TYMKOVICH**, **McWILLIAMS**, Circuit Judges, and **EAGAN,**[*] District Judge.

---

**TYMKOVICH**, Circuit Judge.

---

The question in this bankruptcy appeal is whether a Chapter 7 trustee may bring claims that a Chapter 11 debtor-in-possession could not. We conclude that the trustee is barred in the circumstances of this case from bringing a derivative claim on behalf of a creditors' committee after conversion to Chapter 7.

Accordingly, we AFFIRM the decision of the district court.

## I. Background

Debtor ms55, Inc. (known under its trade name MSHOW.com) provided internet-based meeting and conference technology to corporate clients. In July 2001, after a series of financial setbacks, MSHOW filed for bankruptcy under Chapter 11. 11 U.S.C. § 1101. Shortly after the bankruptcy case was filed, some of MSHOW's unsecured creditors formed a creditors' committee to represent their interests in the proceedings. About the same time, MSHOW sought emergency authority from the bankruptcy court to use its cash on hand as collateral, incur additional post-petition debt, and protect post-petition lenders from existing creditors.

---

[*] The Honorable Claire V. Eagan, District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

The bankruptcy court issued a financing order granting MSHOW's request. This post-petition financing order gave MSHOW, as the debtor-in-possession,[1] authority to use certain of its assets subject to pre-petition security interests, including assets held by secured creditors. Akamai Technologies had previously helped finance MSHOW and was one of its secured creditors holding a pre-petition security interest.

The financing order contained a provision protecting the secured creditors, including Akamai, from "any and all claims" except those that could be brought by the unsecured creditors' committee. Paragraph 7 of the financing order, which is at the heart of this dispute, set out the protective bar:

> Debtor's estate, creditors, holders of claims against or equity interest in, debtor, any official or unofficial committee of holders of claims or equity interests and all such and other persons and entities *shall be forever barred from asserting any and all claims on any basis or theory against the secured creditors*.

R. at 36, ¶ 7 (emphasis added).

The financing order, however, carved out a narrow exception to this bar for an unsecured creditors' committee:

> The Committee shall have until the first date set by the Court for objections to confirmation of a reorganization plan in the Bankruptcy Case to deliver to Secured Creditors . . . [its] written notice of intent . . . to commence an

---

[1] "A debtor-in-possession is a debtor who, during the pendency of the case prior to confirmation of the reorganization plan, retains the bankruptcy estate's property in the fiduciary capacity of a trustee." *Peters v. Pikes Peak Musicians Ass'n.*, 462 F.3d 1265, 1271 n.3 (10th Cir. 2006) (internal quotation and citations omitted).

action against any Secured Creditor asserting any claim, liability, or cause of action, based on any grounds or theory whatsoever . . . but including, without limitation, any claim, liability or cause of action seeking to avoid, [etc.].

R. at 37.

In addition to the explicit language of ¶ 7, the financing order contained other provisions confirming that it bound parties other than MSHOW and was intended to survive conversion to Chapter 7. Paragraph 15, for example, stipulated its provisions were to survive conversion to Chapter 7 bankruptcy. And ¶ 16 stipulated that the protections of ¶ 7 would bind parties to a debtor-in-possession credit agreement that included releases and other protections for secured creditors.[2]

The financing order also required MSHOW to prepare and serve a notice on its creditors that described the agreements contained in ¶ 7. Accordingly, in August 2001, MSHOW served notice including the following language:

If the Committee takes no action against the Secured Creditors by these deadlines [which it estimated to be 90 days from the date of the notice], any claims that may exist against the Secured Creditors will be forever barred. This bar is binding not only on MSHOW and its creditors, but also on any subsequently appointed bankruptcy trustee.

R. at 43, ¶ 8. The notice further acknowledged:

---

[2] The debtor-in-possession credit agreement that was entered pursuant to the financing order also (1) "contained Debtor's acknowledgment that the claims of the Secured Creditor [i.e., Akamai] against it were valid," and (2) "contained an express 'release' of claims by the Debtor against the [debtor-in-possession] Lenders as Secured Creditors, without reference to claims against other Secured Creditors." Aplt. Br. at 12–13 (citing R. at 97).

-4-

All of the provisions of the loan agreements and the Order shall be binding on . . . any trustee subsequently appointed in the bankruptcy case for MSHOW and including upon dismissal, conversion to Chapter 7, or closing the MSHOW case. As a result, these provisions *may* limit the recovery of both pre-petition and post-petition unsecured creditors in the event the case is converted to one under Chapter 7.

R. at 44, ¶ 9 (emphasis added).[3]

Following this notice, the bankruptcy court approved the financing order on August 20, 2001. Over the next year-and-a-half, however, the creditors' committee took no action to assert claims against the secured creditors. Consequently, the parties decided to convert the case to Chapter 7. In its motion to convert the case to Chapter 7, the trustee stated that one of the purposes of conversion was "to initiate avoidance and other types of litigation . . . . by an independent Chapter 7 trustee."[4] R. at 205–8.

Three days before the conversion order was entered, on June 17, 2003, MSHOW and the unsecured creditors' committee filed a stipulated settlement, releasing certain lenders. The settlement said nothing about claims against secured creditors, such as Akamai, except that "all parties to this agreement hereby expressly reserve their rights, claims, and causes of action against any

_____

[3] Since the notice was prepared by MSHOW, the trustee argues that its language has questionable relevance. We have only relied upon the notice to establish effective notice was conferred. We do not rely upon it for interpretation of the financing order.

[4] The trustee writes, "Implicit in that Motion was an understanding that avoidance rights for the benefit of the estate would not expire on conversion; if claims expired, a post-conviction trustee could not pursue them." Aplt. Br. at 14.

third-parties who are not Released parties." R. at 218–19, §§ 9, 14. Akamai was not a released party.

The bankruptcy court entered the conversion order on June 20, 2003. The Chapter 7 trustee subsequently commenced an avoidance action against Akamai to recover transfers for the benefit of the estate. Akamai moved for summary judgment on the ground that the claim was barred by the terms of the financing order. The bankruptcy court denied this motion, and Akamai appealed to the district court. The district court reversed on the ground that the financing order barred the trustee's claims.

The trustee now appeals.

## II. Analysis

A bankruptcy trustee has general authority to avoid certain transfers "for the benefit of the estate." 11 U.S.C. §§ 544, 547, 548, 550. Under the bankruptcy code, a debtor-in-possession has the powers of a trustee, *id.* § 1107(a), and, as such, the authority to bring avoidance actions. *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990) (debtor-in-possession's authority under § 1107(a) includes the right to bring § 544 avoidance action). Importantly, however, where a debtor-in-possession serves as the trustee in a Chapter 11 bankruptcy, a Chapter 7 trustee may not assert any rights that were previously waived by the debtor-in-possession prior to conversion. *Paul v. Monts*, 906 F.2d 1468, 1473 (10th Cir. 1990).

Accordingly, we must first determine if MSHOW, as the debtor-in-possession, waived its right along with the right of the Chapter 7 trustee to bring an avoidance action against Akamai. If it did, we must then consider whether the trustee can still exercise the authority reserved to the creditors' committee to bring such a claim.

*A. Waiver by Debtor-in-possession*

The first issue is readily resolved by the financing order. It clearly states: "Debtor's estate . . . [and] debtor . . . shall be forever barred from asserting any and all claims on any basis or theory against the secured creditors." R. at 36, ¶ 7. It is difficult to construe the language of this legal bar any way other than a waiver of MSHOW's right to bring an avoidance action against secured creditors such as Akamai.

Nevertheless, the trustee suggests several theories in support of his position that he is not barred from bringing suit.[5] The trustee argues (1) a full release did

---

[5] The trustee also argues that avoidance actions forward the fundamental bankruptcy principle of equality of distribution and that this principle does not evaporate under the Bankruptcy Code simply because a case is converted from Chapter 11 to Chapter 7. No one disagrees. Equality of distribution is protected by the debtor-in-possession, trustee, and judicial oversight of the agreements made by debtors and trustees. As we discuss below, the financing order agreed to by MSHOW and approved by a bankruptcy court in this case had the effect of barring litigation against certain creditors once conversion to Chapter 7 dissolved the one entity available to bring suit, the creditors' committee. The equality principle did not evaporate, but its applicability was attenuated by the financing order before conversion to Chapter 7. It was further attenuated after conversion due to the financing order's revocation of the estate's ability to bring suit.

not occur because the creditors' committee retained a right of action; (2) inclusion of the word "trustee" in ¶ 5, but not ¶ 7 of the order, excluded the trustee from the ¶ 7 legal bar; (3) it is unreasonable to conclude the agreement intended conversion to act as an unstated limitation on the creditors' committee right of action; and (4) parol evidence should be admitted to establish the intent of the parties.  All of these arguments are without merit.

*(1)  The Release.*  The trustee first argues that because the order "expressly preserves avoidance claims to be pursued by the [creditors' c]ommittee against the Secured Creditors," it cannot be a full release.  Aplt. Br. at 23.  The basis for this argument is the proposition that a release is an "outright discharge of the entire obligation." *Symons v. Mueller Co.*, 526 F.2d 13, 17 (10th Cir. 1975).  Thus, the trustee argues, the retention of any right to sue implies the financing order did not constitute a full release and, therefore, the trustee may still sue.

But the real question is not whether a full release exists, but rather *who* retained any existing right to bring an avoidance action.  It is well established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court. *Paul v. Monts*, 906 F.2d 1468, 1473 (10th Cir. 1990).  Even the trustee concedes he is "bound by court approved stipulations of a [debtor-in-possession] prior to conversion."  Aplt. Br. at 22.  The creditors' committee may have retained a right of action, but that does not remove the existing bar against the debtor-in-

-8-

possession or, post-conversion, the trustee enforcing those rights. MSHOW and, post-conversion, the trustee are barred from bringing an avoidance action regardless of whether the right to an avoidance action exists. Both the bankruptcy court and district court agreed the financing order barred MSHOW from bringing an avoidance action and that the trustee was similarly barred. The only reason the bankruptcy court denied summary judgment was its conclusion that the trustee succeeded to the creditors' committee right of action.

*(2) The Financing Order.* Turning to the language of the financing order, the trustee contends differing language used in different paragraphs supports a textual argument that the trustee is not barred from asserting avoidance claims. He argues ¶ 7 does not specifically state that the trustee is bound by the agreement, while ¶ 5 of the order mentions that a successor trustee is subject to the order's superiority to other underlying rights of the parties.[6] From this linguistic variation, the trustee argues that we should understand ¶ 7, unlike ¶ 5, allows trustee actions.

We disagree. The language in ¶ 7 explicitly applies to both the debtor and the debtor's estate. The trustee stands in the place of the debtor and represents the interest of the estate. It follows that this bar on the debtor also applies to the

---

[6] Paragraph 5 provides that obligations incurred by the debtor under the financing agreement "[S]hall at all times be senior, in this and any subsequent case under the Bankruptcy Code, to the rights of debtor, any successor trustee . . . ."

trustee. It does not matter that ¶ 7 of the order did not expressly include a trustee; the trustee was inevitably included as successor to the debtor-in-possession under the financing order's provision that its terms would survive conversion.

(3) *Limitation on the Creditors' Committee Right to Bring an Avoidance Action.* Next, the trustee argues that it would be unreasonable to treat the financing order language as an effective bar because conversion would operate as an unstated limitation on the creditors' committee right to bring an avoidance action. For example, the trustee argues conversion could theoretically occur at MSHOW's sole discretion just one day after the debtor-in-possession financing order became final, i.e., one day after its approval, MSHOW could have converted the Chapter 11 action to a Chapter 7 action, thereby closing off the creditors' committee right of action before the committee had time to investigate the need to bring an action. But the fact that Chapter 7 conversion could dissolve the committee immediately after the order became effective demonstrates only that MSHOW failed to retain a meaningful right to enforce avoidance actions for the creditors' committee. It does not mean that MSHOW's waiver of its own rights (and those of the Chapter 7 trustee) to enforce the agreement were so unreasonable as to be unenforceable. It is not unreasonable for the debtor-in-possession to give away certain rights of the estate in order to receive the benefit of additional financing. If the creditors' committee felt MSHOW's actions were either unreasonable or an effort to unjustifiably protect certain secured creditors

from an avoidance action, it could have challenged the financing order or objected at the conversion hearing and sought forestallment of conversion until the avoidance actions had been undertaken. The notice issued to comply with the financing order explicitly warned those whose legal rights might be affected by the order of the deadline to file a motion for reconsideration.

*(4) Parol Evidence.* Finally, the trustee claims the financing order is ambiguous, requiring parol evidence to interpret it. He contends the parties sought conversion for the primary purpose of allowing the trustee to bring avoidance actions, so it makes little sense to conclude that they intended to waive such claims in their financing agreement.

His argument has two flaws. First, the order is not ambiguous. It clearly bars the debtor-in-possession (and the estate) from bringing *any action*. Thus, the parole evidence rule precludes us from examining extrinsic evidence in interpreting the agreement. *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996) ("A court should only admit parol evidence when the contract between the parties is so ambiguous that their intent is unclear.").[7] Furthermore, the conversion order was entered long after the financing order, so the intent of the parties at the time of conversion is not evidence of what they intended when they made the agreement. The fact that some parties later hoped the trustee would be

---

[7] As the financing order implemented an agreement between the parties that stipulated Colorado law would govern disputes, we apply the Colorado laws of contract interpretation.

-11-

able to step into the unsecured creditors' right to sue upon conversion says nothing about the parties' intentions regarding the financing order when it was drafted and entered. The 20-20 nature of hindsight should be most palpable in bankruptcy proceedings.

In sum, none of the trustee's arguments undermine the financing order's language that MSHOW is barred from bringing an avoidance action against Akamai. Both the bankruptcy court and district court reached this same conclusion, and we agree. As a Chapter 7 trustee has no rights greater than the debtor-in-possession, and here, MSHOW had no right to bring an avoidance action to pass on to the trustee, then the trustee was not entitled to bring an avoidance action in its own right.

## B. Independent Right to an Avoidance Action

The trustee next argues that he inherited the unexhausted right retained by the creditors' committee to bring an avoidance action. Akamai responds that the trustee could not inherit any rights from the creditors' committee that he did not inherit from the debtor-in-possession.

This is a matter of first impression for this circuit: whether a Chapter 7 trustee can succeed to the rights of a Chapter 11 creditors' committee upon conversion. The district court concluded the trustee did not succeed to the creditors' committee right because the committee was dissolved upon conversion.

It found the trustee bound by the acts of the debtor-in-possession and, as MSHOW was barred from bringing suit against Akamai, the trustee is similarly bound. We agree on the latter ground.

Chapter 11 expressly provides for the creation of an unsecured creditors' committee, 11 U.S.C. § 1102, but is less clear about the dissolution of a committee. Most courts have concluded that conversion of a Chapter 11 case to a Chapter 7 case results in dissolution of a Chapter 11 committee. *See, e.g.,* 4 Norton Bankr. L. & Prac. 2d § 78:10.5. And with dissolution of the committee, its rights also expire. *Official Comm. of Unsecured Creditors v. Belgravia Paper Co. (In re Great Northern Paper, Inc.)*, 299 B.R. 1, 5 (D.Me. 2003) ("Once the Chapter 11 case was converted to a Chapter 7 case, the Creditors Committee ceased to exist; the Creditors Committee's attorney therefore had no authority to make an assignment, nor did the Creditors Committee have any rights to assign."). The trustee argues here that the right to bring an avoidance action is not a right of the creditors' committee, but rather derivative of the rights of the debtor and the estate. Thus, he contends the rights have not expired. Akamai concedes as much: "Akamai does not contend . . . that avoidance actions . . . 'evaporate' when a case is converted to Chapter 7." Aple. Brief at 19–20.

As a preliminary matter, we do not quarrel that the right of the creditors' committee to bring an avoidance action is derivative. But that conclusion does

-13-

not affect the result here.  Even though the avoidance action rights have not expired, the committee no longer exists to enforce those rights.

The trustee is also prevented from bringing a claim on the existing derivative rights.  As we already explained, a Chapter 7 trustee succeeds only to the rights of the debtor-in-possession, so the trustee is bound by prior actions of the debtor-in-possession to the extent approved by the bankruptcy court.  In *Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990), we concluded:

> The trustee, as successor to the debtor in possession, is bound by his predecessor's authorized actions.  When asserting rights of action against another, *the bankruptcy trustee has no greater rights than the debtor has*.  The trustee is . . . subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor . . . .  He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction.

*Id.* at 1473 (emphasis added) (internal quotations & citations omitted).  Thus, the trustee—like the debtor-in-possession MSHOW—is also barred from bringing an avoidance action, even if such an action has not been extinguished.  The trustee's authority is curtailed by the terms agreed to by MSHOW and approved by the court in the financing order.[8]

---

[8] We hasten to add creditors, the trustee, and the debtor-in-possession have numerous opportunities to challenge or modify unfavorable provisions in a financing order.  Parties could also seek preservation of the claims during conversion to Chapter 7.

The only authority cited by the trustee that suggests he might succeed to the rights of the creditors' committee is *In re Rachles, Inc.*, 131 B.R. 782 (Bankr. D.N.J. 1991), a case deserving some discussion. In *Rachles*, the debtor made fraudulent transfers while under Chapter 11 protection. The creditors' committee filed an adversary proceeding against the transferee to avoid the transfers. The petition was subsequently converted to Chapter 7, and the trustee also filed an adversary proceeding setting forth identical claims. After a question arose as to the timeliness of the trustee's complaint, the trustee sought to consolidate its case with the committee's earlier filed action. Allowing the consolidation, the court concluded:

> Upon conversion and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities. Logically then, it is entirely appropriate for the Chapter 7 Trustee to be substituted as plaintiff in the instant adversary proceeding in the place of the Creditors' Committee *which initially filed the adversary complaint on behalf of the Debtor and this estate.*

*Id.* at 785 (emphasis added). Thus, the creditors' committee claims were really claims of the debtor and his estate—claims that still belonged to the estate after conversion—so it was logical to permit the trustee to carry forward the cause of action initiated by the committee. The trustee was permitted to take hold of the reins and litigate the derivative rights previously asserted by the committee.

*Rachles* should not be read to stand for a proposition that the creditors' committee has independent avoidance claims of its own to which the trustee

-15-

inevitably succeeds. The trustee in *Rachles* was not succeeding to the independent rights of the creditors' committee, but rather joining the committee's already initiated derivative claim of the debtor's rights in a case where the trustee was not otherwise barred by previous arrangements made by the debtor-in-possession.

As a matter of law, a creditors' committee does not have its own right to bring avoidance actions. *See, e.g. Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 563 (3d Cir. 2003) (stating that "§ 1103(c)(5) does not confer the sort of blanket authority necessary for the Committee independently to initiate an adversarial proceeding, including one under § 544(b)"). But courts have "permitted creditors' committees to bring actions *in the name of the debtor*," usually only "in connection with actions against insiders or other persons that the debtor in possession has refused or is reluctant to sue." Collier on Bankruptcy ¶ 1103.05[6][a] (emphasis added). Thus, as the trustee noted, any rights the creditors' committee has to an avoidance action are derivative of the debtor and the estate's claims.[9] In *Rachles*, the trustee

---

[9] We note the committee's right to bring an avoidance action is not without question. Although we are among those courts to allow a committee to bring such an action, *see Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1995), recent Supreme Court precedent may undermine this practice. In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 7–8 (2000), the Supreme Court held that statutory language granting certain powers on behalf of trustees did not grant the same powers to unnamed entities, such as a creditors'

(continued...)

-16-

succeeded to just such derivative estate claims. To the extent the creditors'

committee had been bringing those claims on behalf of the debtor, the trustee

remained free to direct the claims forward.

In re Great Northern Paper, Inc., 299 B.R. 1, also turned on the derivative

nature of the rights asserted by the creditors' committee. According to *Great*

*Northern*, where the interests of the creditors' committee were allied with the

debtor so that the committee was simply bringing claims on behalf of the debtor,

the trustee was free to continue directing the claims forward—essentially taking

over the reins of the estate's claim as was done in *Rachles*. *Id.* at 7–8. But in

*Great Northern,* the interests of the estate, as represented by the debtor, and the

creditors' committee were not aligned. As the creditors' committee wished to

steer its claim contrary to the debtor's intentions, the committee could not be said

to act on behalf of the debtor and the estate, so the committee was not bringing

rights derivative of the debtor. And, as we discussed, a trustee acts only on

[9](...continued)
committee. On this authority, Akamai argues, the creditors' committee here had
no right to bring an avoidance action. Since *Hartford*, however, other circuits
have continued to allow committees to bring avoidance actions. *See, e.g,*
*Chinery*, 330 F.3d 548; *Jefferson County Bd. of County Comm'rs v. Voinovich (In*
*re V Cos.)*, 292 B.R. 290 (B.A.P. 6th Cir. 2003); *Glinka v. Federal Plastics Mfg.*
*(In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64 (2d Cir. 2002).
    Because we conclude the trustee does not succeed to the committee's rights
in any case, we need not discuss the availability of these rights since *Hartford*. It
is enough to note that to the extent the creditors' committee has a right to initiate
an avoidance action, its right is derivative of the debtor-in-possession's right and
is exercised on behalf of the bankruptcy estate.

claims derivative of the debtor's rights so the trustee in *Great Northern* could not guide the creditors' committee claims forward.

*Great Northern* is inapplicable in this case. The creditors' committee claims here are derivative of the debtor because MSHOW specifically granted them to the committee in the financing agreement, so the trustee could *normally* bring those claims forward after conversion as in *Rachles*. But MSHOW also used the financing agreement to bar itself and, post-conversion, the trustee from taking over the reins and acting on those derivative rights.

In sum, the only rights a trustee inherits from a creditors' committee to bring an avoidance action are derivative of the debtor's rights. In this case, the trustee is barred from acting on those derivative rights because the debtor-in-possession was barred in the financing order. The derivative rights exist like a sword in a stone, but there is no Arthur to claim them.

### III. Conclusion

For the reasons set forth above, we AFFIRM.