**In re AMERIGRAPH, LLC, Debtor.**

**Myron N. Terlecky, Chapter 7 Trustee, Plaintiff,**

**v.**

**Peoples Bank, National Association, Defendant.**

**Bankruptcy No. 07–59587.
Adversary No. 10–2028.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

Sept. 14, 2011.

James A. Coutinho and Myron N. Terlecky, Columbus, OH, for Plaintiff.

James S. Huggins, Marietta, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

C. KATHRYN PRESTON, Bankruptcy Judge.

This matter came on for consideration of the Second Motion for Partial Summary Judgment ("Motion") (Doc. 10) filed by Peoples Bank, National Association ("Defendant").[1] The Defendant seeks summary judgment on the claims for relief asserted in this adversary proceeding commenced by Myron N. Terlecky ("Trustee"), who was appointed the Chapter 7 Trustee of the bankruptcy estate of Amerigraph, LLC ("Debtor").

In the Complaint, the Trustee alleges that the Defendant received fraudulent transfers from the Debtor prior to the commencement of the Chapter 7 case.[2] In the Motion, the Defendant contends that the Debtor—acting in its capacity as debtor-in-possession—waived and released the fraudulent transfer claims (as well as the other claims asserted in the Complaint) pursuant to an agreed cash collateral order entered during its Chapter 11 case,[3] that the waiver and release are binding on the Trustee and that the claims therefore should be dismissed. Although the Debtor in fact waived and released any and all claims against the Defendant, see Cash Collateral Order ¶ 8, the Trustee takes the position that he is not bound by the waiver and release because the Cash Collateral Order did not expressly state that it would be binding on a Chapter 7 Trustee and did not state that it would survive conversion. See Plaintiff's Memorandum at 6–7. But the Cash Collateral Order, while not expressly stating that it would be binding on a Chapter 7 Trustee, did state that it would survive conversion to Chapter 7. See Cash Collateral Order ¶ 16. And, in general, a Chapter 7 Trustee is bound by a waiver and release effectuated by a debtor-in-possession pursuant to an order approved after adequate notice to parties in interest. Accordingly, if it was undisputed

---

1. The Defendant has styled the Motion (a) as a "second" motion because the Court denied the Defendant's initial motion for summary judgment due to noncompliance with Procedure 5 of the Southern District of Ohio Administrative Procedures for Electronic Case Filing and (b) as a motion for "partial" summary judgment because the Defendant is not requesting summary judgment on a counterclaim it has filed against the Trustee for costs and attorneys fees.

2. The Trustee also alleged that the Defendant's lien on certain property of the Debtor was unperfected and, based on that allegation, asserted that the Defendant received preferential prepetition transfers and unauthorized postpetition transfers. The Trustee, however, has stated his intent to abandon the counts of the Complaint that are predicated on the alleged imperfection of the lien, including the preference and unauthorized postpetition transfer claims. See Memorandum of Plaintiff in Opposition to Second Motion for Partial Summary Judgment and Memorandum in Support (Doc. 16) ("Opposition Memorandum") at 2.

3. See Agreed Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 ("Cash Collateral Order") (Doc. 78 in Case No. 07–59587).

that parties in interest in the Debtor's Chapter 11 case had received adequate notice of the Cash Collateral Order, the Court would have concluded that the Trustee is bound by the Debtor's waiver and release and would have granted summary judgment in favor of the Defendant and against the Trustee. In the instant case, however, there is a genuine issue of material fact as to whether parties in interest received adequate notice of the Cash Collateral Order. The Cash Collateral Order, therefore, provides no basis for granting summary judgment in favor of the Defendant.

The Defendant also relies on an order that the Court entered during the Chapter 11 case granting the Defendant relief from the automatic stay.[4] The Stay Relief Order, however, simply granted the Defendant relief from the automatic stay and contained no waiver and release or any other agreement by the Debtor. Moreover, the avoidability of the Defendant's lien as an alleged fraudulent transfer was not at issue in connection with the Stay Relief Order. Because neither the Cash Collateral Order nor the Stay Relief Order provides a basis for granting summary judgment in favor of the Defendant, the Court must deny the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Having considered the record and the arguments of the parties, the Court makes the following findings of fact and conclusions of law.

## I. Standard of Review for Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[5] The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the movant satisfies this burden, the nonmoving party must then assert that a fact is genuinely disputed and must sup-

**4.** *See* Order Granting Motion for Relief from the Automatic Stay and/or Codebtor Stay ("Stay Relief Order") (Doc. 101 in Case No. 07–59587).

**5.** Rule 56, in its current form, became effective on December 1, 2010, after this adversary proceeding was commenced. "Amendments to the Federal Rules of Civil Procedure govern proceedings after the date they are effective in an action then pending unless the Supreme Court specifies otherwise or the court determines that applying them in a particular action would be infeasible or work an injustice." *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312, 1317 n. 4 (11th Cir.

2010). The summary judgment standard now appears in Rule 56(a) rather than, as it formerly did, Rule 56(c); however, the standard did not materially change. *See* Fed.R.Civ.P. 56(a) advisory committee's note (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). Inasmuch as the amended rule does not change the standard for entry of summary judgment, application of "the amended version of Rule 56 in this case is just and practicable and would not work a manifest injustice...." *Farmers Ins. Exch. v. RNK, Inc.,* 632 F.3d 777, 782 n. 4 (1st Cir.2011).

port the assertion by citing to particular parts of the record. *See* Fed.R.Civ.P. 56(c)(1). The mere allegation of a factual dispute is not sufficient to defeat a motion for summary judgment; to prevail, the non-moving party must show that there exists some genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all justifiable inferences must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

The Sixth Circuit Court of Appeals has articulated the following standard to apply when evaluating a motion for summary judgment:

> [T]he moving [party] may discharge its burden by "pointing out to the ... court ... that there is an absence of evidence to support the nonmoving party's case." The nonmoving party cannot rest on its pleadings, but must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."

*Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir.1997) (citations omitted). A material fact is one whose resolution will affect the determination of the underlying action. *See Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996). An issue is genuine if a rational trier of fact could find in favor of either party on the issue. *See Schaffer v. A.O. Smith Harvestore Prods., Inc.*, 74 F.3d 722, 727 (6th Cir.1996). "The substantive law determines which facts are 'material' for summary judgment purposes." *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir.1994). In determining whether each party has met its burden, the court must keep in mind that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548.

## II. Findings of Fact

Based upon the record, including the docket of the Debtor's bankruptcy case,[6] the Court makes the following findings of fact:

The Debtor's bankruptcy case began on November 28, 2007 ("Petition Date") when three petitioning creditors (who were later joined by two others) filed an involuntary petition against the Debtor.[7] As of the Petition Date, substantially all of the Debtor's assets were subject to a first priority security interest held by the Defendant and a second priority security interest held by Lazear Capital Partners, Ltd. ("LCP"), a company that had provided investment banking and other services relating to the sale of certain of the Debtor's assets prior to the Petition Date. Asserting that its collateral included cash collateral, on January 9, 2008, LCP filed its Motion of Lazear Capital Partners, Ltd. to Prohibit Debtor's Use of Cash Collateral, or Alternatively, to Condition Such Use Upon the Provision of

---

**6.** The Court may take judicial notice of its own docket.

**7.** The Defendant was not one of the petitioning creditors.

Adequate Protection ("Cash Collateral Motion") (Doc. 50). LCP served the Cash Collateral Motion on the Debtor, the Defendant, the United States Trustee, counsel to the petitioning creditors and counsel to several other creditors who had made an appearance in the case.[8] Nothing in the Cash Collateral Motion suggested that the Debtor might waive and release claims against LCP or the Defendant.

The Defendant did not file a motion directly relating to the Debtor's use of cash collateral. Instead, on January 25, 2008, the Defendant filed its Second Motion of Peoples Bank, National Association, for Relief from the Automatic Stay (Doc. 61) ("Stay Relief Motion"), thereby seeking termination of the automatic stay in order to liquidate its collateral.[9] In the Stay Relief Motion, the Defendant stated that "unless and until Peoples Bank has been fully paid for all amounts due and owing to it … it will not consent to the use of any cash collateral for any purpose whatsoever," Stay Relief Motion at 8, and requested that, if an order for relief was entered against the Debtor, "Amerigraph's use of the 'cash collateral' to completely pay off the [obligations owed to the Defendant] be approved by the Court." Stay Relief Motion at 10. The Defendant served the Stay Relief Motion on the Debtor, LCP, the United States Trustee, counsel to the petitioning creditors and counsel to several other creditors who had made an appear-

ance in the case at that point.[10] Like the Cash Collateral Motion, the Stay Relief Motion did not address the possibility that the Debtor might waive and release claims against the Defendant or LCP.

The Debtor eventually consented to the entry of an order for relief under Chapter 11 of the Bankruptcy Code and, on February 1, 2008, the Court entered such an order. See Doc. 66 in Case No. 07–59587. On February 5, 2008, the Debtor, pursuant to Rule 1007(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)"), filed its List of Creditors Holding 20 Largest Unsecured Claims ("Top 20 List") (Doc. 73). The following creditors, with unsecured claims aggregating approximately $2.6 million, appeared on the Top 20 List: AEP; AIN Plastics of Ohio, Inc.; Buckeye Boxes, Inc.; Coates Screen; Commercial Cutting & Graphics, Inc.; Curbell Plastics, Inc.; Enovation Graphic Systems, Inc./Fujifilm Graphic Systems USA; Jarden Plastic Solutions; Joe Piper Inc.; Kolorcure; M & R Sales & Service; Millcraft Group; Pace Industries, Inc.; Piedmont Plastics, Inc.; Roberds Converting Co. Inc.; Saati/Majestech; Unisource Worldwide, Inc.; Welch Packaging Group; Xcel Products, Inc.; and Xpedx. The creditors included on the Top 20 List who never received notice of the Cash Collateral Motion or the Stay Relief Motion held claims aggregating nearly $2,000,000.

8. Only four of the creditors that received notice of the Cash Collateral Motion were included on the List of Creditors Holding 20 Largest Unsecured Claims that the Debtor filed later in the case. Those creditors were Piedmont Plastics, Inc., Commercial Cutting & Graphics, Inc., Curbell Plastics, Inc. and Kolorcure Corporation.

9. The Court denied the Defendant's first motion for relief from the automatic stay for two reasons: (a) because notice of that motion was not served on all parties in interest as required by the Local Bankruptcy Rules and

(b) because the motion failed to attach a list of the names and addresses of all parties served as required by the Local Bankruptcy Rules. See Doc. 59 in Case No. 07–59587.

10. As with the Cash Collateral Motion, only four of the creditors that received notice of the Stay Relief Motion—Commercial Cutting & Graphics, Inc.; Curbell Plastics, Inc.; Kolorcure Corporation; and Piedmont Plastics, Inc.—were on the List of Creditors Holding 20 Largest Unsecured Claims.

On February 11, 2008—approximately one week after the entry of the order for relief—the Court entered the Cash Collateral Order, which had been negotiated among the Debtor, the Defendant and LCP and approved and submitted by attorneys for each of them. The Cash Collateral Order in essence constituted an order approving an agreement among the Debtor, the Defendant and LCP relating to the use of cash collateral and relief from the automatic stay. But no motion seeking approval of the agreement set forth in the Cash Collateral Order was ever filed and, as a result, no motion seeking such relief was ever served on the creditors on the Top 20 List. Neither the Cash Collateral Motion nor the Stay Relief Motion provided parties in interest notice of the Debtor's release and waiver of claims against the Defendant. Yet the Cash Collateral Order provided that the Debtor "hereby waives and releases any and all claims against Peoples Bank and LCP, whether arising at law or in equity, including without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to Sections 105, 510, 542 through 553 inclusive of the Bankruptcy Code." Cash Collateral Order ¶ 8. The Cash Collateral Order further stated that "[n]otwithstanding any other provision of this Order, the Unsecured Creditors Committee shall have a period of sixty (60) days from the date of the filing of its formation notice by the United States Trustee ... to bring any action against Peoples Bank or LCP pursuant to sections 105, 510, 542 through 553, inclusive, of the Bankruptcy Code." Cash Collateral Order ¶ 9. The committee of unsecured creditors ("Committee") had not yet been formed at the time the Cash Collateral Order was entered.

The Debtor's right to use cash collateral expired on February 29, 2008. *See* Cash Collateral Order ¶ 19. The Cash Collater-al Order, however, stated that its "provisions ... and any actions taken pursuant hereto shall survive entry of any Order that may be entered ... converting Amerigraph's Chapter 11 case to a Chapter 7 case[.]" Cash Collateral Order ¶ 16.

Although paragraph 17 of the Cash Collateral Order required the Debtor to mail a copy of the order "to all known parties in interest, to any party that has filed a request for notices with this Court after such date, and the United States Trustee," Cash Collateral Order ¶ 17, there is no certificate of service on file with the Court evidencing compliance with this service requirement. The Defendant contends that "the Cash Collateral Order was sent to every member of the Unsecured Creditors' Committee, the Debtor and Debtor in Possession, and all affected parties." Defendant's Reply to Memorandum of Plaintiff in Opposition to Second Motion for Partial Summary Judgment and Memorandum in Support ("Reply") at 4. Notice of the Cash Collateral Order was provided electronically to counsel who had made an appearance in the case on behalf of certain creditors. Those creditors, however, did not include all, or even most, of the creditors on the Top 20 List. As the Trustee notes, "[w]hile the Cash Collateral Order required that it was to be mailed to various parties, the Court's docket is silent as to whether that mailing occurred." Plaintiff's Memorandum at 7. Moreover, the Cash Collateral Order, although styled as an interim order (and even though notice of it had not been served on the Top 20 List), did not set forth a deadline for parties in interest to file objections to provisions of the Cash Collateral Order.

On February 22, 2008 (11 days after the entry of the Cash Collateral Order), the United States Trustee filed a notice of the formation of the Committee. *See* Doc. 96 in Case No. 07–59587. Under the terms of

the Cash Collateral Order, the filing of this notice triggered the 60–day period for the Committee to bring actions against the Defendant. That period expired on or about April 22, 2008 without the Committee or any other party in interest having brought an action against the Defendant.[11]

On February 28, 2008, the Court entered the Stay Relief Order. After noting that no response to the Stay Relief Motion had been received, the Stay Relief Order simply stated that "relief from the stay imposed by 11 U.S.C. § 362(a) ... is granted."

On April 14, 2008, the Debtor filed its Motion of Amerigraph LLC to Convert Chapter 11 Case to One Under Chapter 7 (Doc. 151). On May 21, 2008, the Court entered an order granting the Debtor's *motion to convert. See* Doc. 189 in Case No. 07–59587.[12] The next day, on May 22, 2008, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's estate. On January 28, 2010, the Trustee commenced this adversary proceeding.

## III. Law and Analysis

For the reasons explained below, neither the Cash Collateral Order nor the Stay Relief Order provides a basis for granting summary judgment in favor of the Defendant.

11. The United States Trustee filed an amended notice of appointment on February 26, 2008. *See* Doc. 99 in Case No. 07–59587.

12. Because the Committee's challenge period expired before the Debtor's case was converted to Chapter 7, the Court does not reach the issue of whether the Trustee could have "inherited the unexhausted right retained by the creditors' committee to bring an avoidance action." *Hill v. Akamai Technologies, Inc. (In re MS55, Inc.),* 477 F.3d 1131, 1140 (10th Cir.2007) (holding that "the only rights a trustee inherits from a creditors' committee to bring an avoidance action are derivative of the debtor's rights").

## A. Cash Collateral Order

■ Although the Debtor's case began with the filing of an involuntary petition, an order for relief had already been entered when the Court entered the Cash Collateral Order, and the Debtor was at that time indisputably a debtor-in-possession.[13] As such, the Debtor had the powers of a Chapter 11 Trustee, including the power to negotiate for the use of cash collateral and the authority to bring—and waive the right to bring—avoidance actions. 11 U.S.C. § 1107(a). *See also Hill v. Akamai Technologies, Inc. (In re MS55, Inc.),* 477 F.3d 1131, 1134–35 (10th Cir. 2007). It is, moreover, "well established that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior actions of the debtor-in-possession to the extent approved by the court." *MS55,* 477 F.3d at 1135. *See also Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 944 (9th Cir.2007); *Armstrong v. Norwest Bank, Minneapolis, N.A.,* 964 F.2d 797, 801 (8th Cir.1992) ("[I]t is axiomatic that the [Chapter 7] Trustee is bound by the acts of the debtor-in-possession[.]"); *Pollack v. FDIC (In re Monument Record Corp.),* 71 B.R. 853, 862 (Bankr.M.D.Tenn. 1987) ("The courts recognize that the acts

13. At least one court has held that an involuntary Chapter 11 debtor is a debtor-in-possession the moment the involuntary Chapter 11 petition is filed. *See Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining Co.),* 440 B.R. 878, 885–86 (Bankr.D.Utah 2010). According to other courts, the Chapter 11 involuntary debtor is not a debtor-in-possession, and does not have the powers of a trustee, until the order for relief is entered. *See, e.g., In re Roxy Roller Rink Joint Venture,* 73 B.R. 521, 527 (Bankr.S.D.N.Y.1987). The Court need not reach that issue here in light of the fact that the Cash Collateral Order was entered after the order for relief and, therefore, after the Debtor clearly was a debtor-in-possession.

of the debtor-in-possession generally bind a subsequently-appointed trustee."). Thus, an agreement made by a debtor-in-possession that is set forth in an agreed cash collateral order generally will—unless the order expressly states otherwise—be binding on a Chapter 7 Trustee. *See MS55, Inc.,* 477 F.3d at 1135; *Armstrong,* 964 F.2d at 801; *In re Bettis,* 97 B.R. 344, 347 (Bankr.W.D.Tex.1989). The general rule serves the salutary purpose of encouraging creditors "to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of . . . reversal at the hands of a later appointed trustee." *Armstrong,* 964 F.2d at 801. Put differently, the general rule "will encourage lien creditors to better cooperate with a reorganizing debtor and reduce pressure, early in the case, to litigate and, perhaps, prematurely 'pull the plug' on a debtor." *In re Buzzworm, Inc.,* 178 B.R. 503, 509 (Bankr.D.Colo.1994).

■ The general rule applies whether or not the order containing the debtor-in-possession's agreement expressly makes the order binding on a trustee—at least where, as in the instant case, the agreed order expressly states that its provisions will survive conversion to Chapter 7. *See MS55, Inc.,* 477 F.3d at 1136 ("It does not matter that ¶ 7 of the order [barring claims against the secured creditor] did not expressly [barr] a trustee; the trustee was inevitably included as successor to the debtor-in-possession under the financing order's provision that its terms would survive conversion."). *See also Steege v. Accountants Prof'l Staf Inc. (In re Superior Toy & Mfg. Co., Inc.),* 1995 WL 276024, at *9 (N.D.Ill. 1995 May 9, 1995) (rejecting Chapter 7 Trustee's argument that she was not bound by the debtor-in-possession's assumption of an agreement merely because there was no express provision in the assumption order making it binding on

a Chapter 7 Trustee), *aff'd,* 78 F.3d 1169 (7th Cir.1996). The Court, therefore, rejects the Trustee's argument that the Cash Collateral Order is not binding on him merely because it did not expressly state that it would be binding on a Chapter 7 Trustee.

■ The general rule, however, is applicable only if proper notice of the debtor-in-possession's agreement is provided to parties in interest. Accordingly, those courts that have applied the rule have done so only after making it clear that adequate notice had been provided. *See MS55, Inc.,* 477 F.3d at 1134 (describing the steps that had been taken to provide effective notice to creditors of the agreed cash collateral order); *Bettis,* 97 B.R. at 347 (holding that the Chapter 7 Trustee was bound by the stipulation of the debtor-in-possession where, among other things, "full notice" of the stipulation was provided); *Monument Record,* 71 B.R. at 856 (holding that Chapter 11 Trustee was bound by agreed order stipulated to by debtor-in-possession prior to appointment of the trustee after finding that "[t]here were no deficiencies of notice").

Moreover, several courts have declined to apply the general rule based on inadequate notice. *See Int'l Fibercom,* 503 F.3d at 945 (holding that the Chapter 7 Trustee was not bound by debtor-in-possession's court-approved assumption of insurance policy because the notice provided in connection with the assumption motion "violated the bankruptcy court's notice and conspicuousness requirements"); *Buzzworm,* 178 B.R. at 513–14 (holding that order approving cash-collateral stipulation pursuant to which the debtor-in-possession waived certain rights was not binding on the Chapter 7 Trustee where the notice provided to creditors did not adequately disclose the rights being waived); *In re Delafield Dev.,* 54 B.R. 442, 444–45 (Bankr.

E.D.Wis.1985) (holding that court-approved stipulation by debtor-in-possession providing for the full payment of certain claims was not binding on the Chapter 7 Trustee where notice of the stipulation was not provided to other creditors); *Begier v. Am. Express, Inc. (In re Am. Int'l Airways, Inc.)*, 74 B.R. 691, 696 (Bankr. E.D.Pa.1987) (rejecting the defendant's argument that a stipulation into which the debtor-in-possession had entered required dismissal of an action commenced by the Chapter 11 Trustee because, among other things, notice of the stipulation was insufficient).

■ The Defendant relies on both the Cash Collateral Motion and the Cash Collateral Order itself in support of its argument that the general rule should apply in the instant case. With respect to the Cash Collateral Order, the Defendant points to (1) the 60–day period that the order provided the Committee to bring actions against the Defendant and (2) the fact that the Committee never brought any such action. The Defendant, however, cites no authority—and the Court is aware of none—supporting the proposition that the Committee's inaction binds the Trustee. In short, the Committee's failure to avail itself of its opportunity to bring an action against the Defendant is beside the point. Accordingly, the Cash Collateral Order does not support granting summary judgment in favor of the Defendant.

Nor does the Cash Collateral Motion. As explained above, the Cash Collateral Motion made no mention of the possibility that the Debtor might waive and release claims against the Defendant. The Cash Collateral Motion, therefore, cannot serve as a springboard from which the Court could reach the conclusion that there was

adequate notice of the waiver and release provisions of the Cash Collateral Order. *See Int'l Fibercom*, 503 F.3d at 943 (holding that the Chapter 7 Trustee was not bound by an order entered during the Chapter 11 case where "at no point did the motion [seeking approval of the order] state that the requested relief would result in cross-collateralization"); *Buzzworm*, 178 B.R. at 513–14 ("The notice failed to ... identify the right ... to be waived[.] ... [T]he notice, in a circumstance such as this, must be meaningful, explicit, effective, and directed to all appropriate creditors and other parties-in-interest. If an agreement seeks to effect what is essentially a waiver of rights of creditors, such notice must be sufficient to enable affected creditors to knowingly and expressly waive their rights."); *In re Tek–Aids Indus., Inc.*, 145 B.R. 253, 257 (Bankr.N.D.Ill. 1992) ("The [i]nterim [c]ash [c]ollateral [o]rders cannot give the Bank a lien on the Debtor's postpetition general *intangibles* when the motion failed to request such relief.").

In addition, no other motion disclosing the Debtor's intent to waive and release claims against the Defendant was ever served on parties in interest. Such a motion should have been filed and, given that the Committee had not yet been formed, should have been served on the creditors on the Top 20 List. *See* Fed. R. Bankr.P. 4001(d).[14] *See also Solow v. First Am. Bank (In re Papa's Market Café, Inc.)*, 162 B.R. 519, 523 (Bankr.N.D.Ill.1993) ("The purpose of Rule 4001(d) is to protect the interests of all parties that may be adversely affected by an undisclosed agreement by affording them notice and the opportunity to timely object, and to remedy what were perceived as 'sweetheart

14. Under Bankruptcy Rule 4001(d), a motion seeking approval of an agreement relating to the use of cash collateral must be served on "the creditors included on the list filed under [Bankruptcy] Rule 1007(d)," Fed. R. Bankr.P. 4001(d)(1)(C), that is, the Top 20 List.

deals' between the debtor and secured creditors.... After the proper notice is filed and if there are no objections, the court may then enter an order to approve or disapprove an agreement without further hearings." (citations omitted)); *In re Ridgeline Structures, Inc.*, 154 B.R. 831, 832 (Bankr.D.N.H.1993) ("In fact, what the Court was called upon to approve ... was not the terms set forth in the motion, but rather a stipulation between the debtor and the Federal Deposit Insurance Corporation ... that was reached and filed in open Court at the outset of the hearing. That by itself requires an objection period ... and a ... hearing notice to an objector under Rule 4001(d).").

True, there are mechanisms other than Bankruptcy Rule 4001(d) that can be used to provide the appropriate notice to parties in interest. For example, the Court may order that the service requirements of Bankruptcy Rule 4001(d) "shall not apply and the agreement may be approved without further notice[,]" if the Court "determines that a motion made pursuant to subdivisions (a), (b), or (c) of this rule was sufficient to afford reasonable notice of the material provisions of the agreement and opportunity for a hearing." Fed. R. Bankr.P. 4001(d)(4). In other words, if the material provisions of a cash collateral agreement are disclosed in a motion filed before the agreement is reached, then a motion seeking approval of the agreement pursuant to Bankruptcy Rule 4001(d) might be unnecessary. In the instant case, however, no motion notifying parties in interest of the Debtor's release and waiver of claims against the Defendant—a clearly material provision of the Cash Collateral Order—was ever filed and served.

Although it is not the preferred method, another way that notice of a cash collateral agreement (that has not been the subject of a motion) is sometimes provided to parties in interest is to request that the Court enter an order on an interim basis and include in the order provisions designed to provide adequate notice; such an interim order typically will require that the debtor-in-possession serve the order on parties in interest along with notice of (1) an opportunity to object to the entry of the order on a final basis and (2) the opportunity for a hearing in the event that an objection is filed. *See Monument Record*, 71 B.R. at 855 (agreed order provided that the order was to be served on all creditors and that the order would become final if no objection and request for a hearing was filed within ten days of its entry). In the instant case, therefore, the Cash Collateral Order should have been served on the creditors on the Top 20 List (given that the Committee had not yet been formed), and a notice providing those creditors a deadline to object and an opportunity for a hearing should have been provided. The Cash Collateral Order required the Debtor to serve the order on parties in interest, but there is nothing on the docket of the Debtor's bankruptcy case stating that such service occurred. It is possible that the Cash Collateral Order was served on all parties in interest, including the creditors on the Top 20 List, and it is conceivable (although unlikely) that, even though the terms of the Cash Collateral Order did not require notice to parties in interest, the order was served along with a notice regarding an opportunity to object. The Court, however, cannot presume that any of those things occurred. Accordingly, the Court cannot conclude, based on the record before it, that the Trustee should be bound by the waiver and release set forth in the Cash Collateral Order.

In the Reply, the Defendant suggests that not granting summary judgment in its favor would produce a parade of horribles: (1) the Court's orders could be "freely disregarded," (2) "chaos" in the relations

between debtors-in-possession and their creditors would ensue and (3) the Defendant, having "completely changed its position more than three years ago," would endure a "completely inequitable" result. With respect to the first and second of those items, although the Court is denying summary judgment, the Court also is acknowledging the general rule binding Chapter 7 Trustees to agreements made by debtors-in-possession that are approved by the Court; the Court is holding only—as other courts have done—that the rule does not apply if there was a failure to provide adequate notice. Thus, the Court concludes that its ruling will not lead to chaos or a disregard of future court orders. With respect to the third item, even if the Defendant's change in position were a valid basis for enforcing the Cash Collateral Order against the Chapter 7 Trustee despite inadequate notice—an issue the Court does not reach at this time—the Court would need evidence regarding the facts relating to the alleged change in position, not merely argument of counsel.

### B. Stay Relief Order

■ In the Motion, the Defendant relied on the Stay Relief Order to oppose the Trustee's allegations that the Defendant's lien was unperfected and that the Defendant had received preferential prepetition and unauthorized postpetition transfers. *See* Motion at 14–18. Because the Trustee has stated that he intends to abandon the argument that the Defendant's lien was imperfected, *see* Opposition Memorandum at 2, the Court need not address the effect of the Stay Relief Order on the claims for relief that are predicated on imperfection (*i.e.,* the preferential and unauthorized postpetition transfer claims).

The Trustee's intended abandonment of those claims does not entirely dispose of the Stay Relief Order for purposes of this

Opinion. In the Opposition Memorandum, the Trustee suggested that the Defendant was seeking to dismiss all of the claims for relief—including the fraudulent transfer claims—based on the Stay Relief Order, and the Trustee argued that an order granting an unopposed motion for relief from stay is never binding on a Chapter 7 Trustee because such an order arises from a "summary proceeding." The Defendant has disagreed with that proposition. The Court, however, need not reach the issue of whether an order granting an unopposed motion for relief from stay is ever binding on a Chapter 7 Trustee. Quite simply, the avoidability of a lien based on fraudulent transfer law—which the Trustee concedes is all he intends to pursue at this point—typically is not adjudicated in the context of a motion for relief from the automatic stay. *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 34–35 (1st Cir.1994); *In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1234 (7th Cir.1990); *Simon v. JP Morgan Chase Bank (In re Lebbos* ), 2011 WL 3701828, at *6 (Bankr.E.D.Mich. Aug. 23, 2011) ("[A] lien avoidance action based on a trustee's invocation of his strong arm powers under § 544 are beyond the scope of a court's limited inquiry under § 362(d)."). The avoidability of the Defendant's lien based on fraudulent transfer law certainly was not adjudicated when the Court entered the Stay Relief Order. Nor did the Debtor enter into any agreement with the Defendant (regarding the avoidability of its lien or anything else) in connection with the Stay Relief Order. *Cf. Monument Record,* 71 B.R. at 862 (holding that, where the debtor resolved a motion for relief from stay by stipulating that the creditor's security interest was a valid first lien, the court-approved stipulation, which was entered with adequate notice, was binding on the later appointed Chapter 11 trustee). Regardless of the binding effect of the Stay Relief Order on

the Trustee in general, that order certainly was not binding with respect to an issue—the avoidability of the Defendant's lien—that the Court did not adjudicate when it entered the Stay Relief Order.

## IV. Conclusion

The Stay Relief Order is not binding on the Trustee with respect to the issue of the avoidability of the Defendant's lien as an alleged fraudulent transfer. Moreover, based on the record as it currently exists, the Court cannot determine whether adequate notice of the Debtor's waiver and release of claims against the Defendant was provided to parties in interest and, therefore, cannot determine whether the Cash Collateral Order should be binding on the Trustee.

" 'A court should not grant a summary judgment [motion] until the facts have been sufficiently developed to enable it to decide with reasonable certainty that it is making a correct determination of the law.' " *Drown v. Dollar Bank, FSB (In re Knisley*), 437 B.R. 253, 260 (Bankr. S.D.Ohio 2010) (quoting *Local Union No. 1423, Glaziers v. P.P.G. Indus., Inc.*, 378 F.Supp. 991, 1000 (N.D.Ind.1974)).

For the reasons discussed above, the Motion is **DENIED.** The Court will set this adversary proceeding for a status conference by separate notice.

**IT IS SO ORDERED.**