ELECTRONIC CITATION: 15 FED App. 0006P (6th Cir.)
File Name: 15b0006p.06

## BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re:  DONALD BRETT MATTESON;<br>MARY FAITH MATTESON,<br><br>Debtors.<br>_____<br><br>DONALD BRETT MATTESON;<br>MARY FAITH MATTESON,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 14-8026 |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee.
Bankruptcy Case No. 10-08741; Adv. Pro. No. 13-90245

Argued: February 3, 2015

Decided and Filed: August 10, 2015

Before: DELK, OPPERMAN, and PRESTON, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:** Craig Goldblatt, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. **ON BRIEF:** Craig Goldblatt, Danielle Spinelli, Nancy L. Manzer, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant.

———————————

## OPINION

———————————

**C. KATHRYN PRESTON**, Chief Bankruptcy Appellate Panel Judge. Bank of America, N.A. (the "Bank") appeals the bankruptcy court's order on cross motions for summary judgment which reduced the amount of the debt owed to the Bank on two mortgages. The Debtors' chapter 13 plan provided for the cure of any defaults and maintenance of regular monthly mortgage payments on several pieces of real property, pursuant to 11 U.S.C. § 1322(b)(5). The Bank failed to file a proof of claim for either of the mortgage debts. The Debtors made all required plan payments to the chapter 13 Trustee. Because the Bank failed to file proofs of claim, the Bank did not receive any disbursements from the Trustee for the mortgage debts. After entry of their chapter 13 discharge, the Debtors filed an adversary proceeding seeking a determination that the Bank's liens had been discharged upon completion of the plan. The bankruptcy court determined that the liens had passed through the bankruptcy, but that the amount of debt secured by each lien should be reduced by the amount that the Bank would have been paid if it had filed proofs of claim. On appeal, the Bank asserts that there is no basis in law for the bankruptcy court's decision to reduce the amount of its debt. The Debtors have not filed a brief or participated in this appeal in any way. For the reasons stated below, the Panel **AFFIRMS** in part, **REVERSES** in part, and **REMANDS** this case to the bankruptcy court for entry of a judgment consistent with this opinion.

## ISSUE ON APPEAL

The sole issue on appeal is whether the bankruptcy court erred by reducing the amount of the secured debt owed to the Bank under mortgage loans provided for in the Debtors' chapter 13 plan on the basis that the Bank did not file proofs of claim with respect to the debts.

No. 14-8026, *In re Matteson*

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6) and (c)(1). Pursuant to 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citation and internal quotation marks omitted). The Sixth Circuit allows appeals from "an order in a bankruptcy case [that] finally disposes of discrete disputes within the larger case." *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir.1996) (internal quotation marks, alteration, and citation omitted). The order before the Panel grants partial summary judgment to each of the parties and fully disposes of the adversary proceeding. Therefore, it is a final order. *See Geberegeorgis v. Gammarino* (*In re Geberegeorgis*), 310 B.R. 61 (B.A.P. 6th Cir. 2004) ("[A]n order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting.")

> Conclusions of law are reviewed *de novo*. *Mitan v. Duval* (*In re Mitan*), 573 F.3d 237 (6th Cir. 2009). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Palmer v. Washington Mut. Bank* (*In re Ritchie*), 416 B.R. 638, 641 (6th Cir. BAP 2009) (emphasis in original) (citing *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., LLC* (*In re Brice Rd. Devs., LLC*), 392 B.R. 274, 278 (6th Cir. BAP 2008)).

*Old Republic Title Co. of Tenn. v. Looney* (*In re Looney*), 453 B.R. 252, 254 (B.A.P. 6th Cir. 2011).

## FACTS

Donald and Mary Matteson (the "Debtors") filed a petition for relief under chapter 13 of the Bankruptcy Code in August 2010. The Debtors listed Bank of America on Schedule D of their schedules as a creditor with five mortgage loans secured by liens on three parcels of real property.

Of the five loans, the two relevant to this appeal are a loan secured by a first mortgage against 3000 Lylewood Road, Woodlawn, Tennessee for $25,488.14 (the "Lylewood Road Mortgage") and a loan secured by a first mortgage against 681 Arctic Avenue, Oak Grove, Kentucky for $38,569.35 (the "Arctic Avenue Mortgage").

The Debtors proposed a chapter 13 plan that provided for the curing of any default and the maintenance of ongoing payments on all five of the Bank's mortgage loans pursuant to 11 U.S.C. § 1322(b)(5). Pursuant to the terms of the chapter 13 plan, the "Trustee shall pay the allowed claims for arrearages, and Trustee shall pay the postpetition monthly payments to creditor." The plan further provided that "[m]onthly ongoing mortgage payments shall be paid by the trustee commencing with the later of the month of confirmation or the month in which a proof of claim itemizing the arrears is filed by such claimholder." The plan mandated that a creditor must file a proof of claim in order to receive distributions from the Trustee under the plan. At the time the Debtors filed their bankruptcy petition, they were current on the Lylewood Road Mortgage loan and Arctic Avenue Mortgage loan. For this reason, the Debtors did not identify any arrearage for either mortgage in their proposed plan. By the time the court confirmed the plan, however, both of these mortgage loans with the Bank were approximately one month in arrears.

The bankruptcy court confirmed the Debtors' plan on October 8, 2010. The order confirming the plan lists each of the Bank's mortgages as "long term" debts provided for under 11 U.S.C. § 1322(b)(5). The Bank did not file a proof of claim for the Lylewood Road Mortgage loan or the Arctic Avenue Mortgage loan. At the time the Debtors' case was filed, the Bank's typical practice was to file proofs of claim only if and when a debtor was in arrears at the time of commencement of a bankruptcy case.[1]

The Trustee made no payments to the Bank on either the Lylewood Road Mortgage loan or the Arctic Avenue Mortgage loan during the plan period. In June 2013, approximately 32 months after the plan was confirmed, the Trustee determined that the plan was complete and that no further

---

[1] The Bank asserts that, since that time, it has modified its practice to now file a proof of claim even when a loan is current.

payments from the Debtors were necessary. On August 9, 2013, the bankruptcy court entered an order discharging the Debtors. The Trustee filed his final report and account on October 4, 2013. The Trustee refunded $9,092.61 to the Debtors.[2] The bankruptcy court closed the Debtors' chapter 13 case on November 4, 2013.

In June 2013, the Debtors filed an adversary proceeding against the Bank in which they sought to avoid the Lylewood Road Mortgage and Arctic Avenue Mortgage liens based on the Bank's failure to file proofs of claim for the loans secured by those mortgages. The parties filed cross motions for summary judgment based on a stipulation of facts. Following a hearing on the motions, the bankruptcy court issued an oral ruling.

The bankruptcy court held that by failing to file proofs of claim the Bank "waived payment of their debt under the plan." (Tr. Regarding Hr'g Held Jan. 7, 2014 at 74:18-22, *Matteson v. Bank of America, N.A.*, No. 13-90245 (Bankr. M.D. Tenn. May 16, 2014), ECF No. 59.)[3] The bankruptcy court held:

> They were bound by confirmation of the plan for the life of this plan to accept the payments the Debtors were making to the Trustee. And if they make a choice not to accept their payments, they can't turn around and say that they had a right to the payments anyway when the plan is over and that they can collect those payments either from the Debtors or through their lien, by foreclosure. If they could do that, if that's all a secured creditor had to do is don't file a proof of claim and don't get paid on the lien, wait till the plan is over and then declare default and foreclose, everything that Congress did in 1978 with respect to secured claim holders is out the window.

(Jan. 7, 2014 Tr. 75:2-13.)

> Now, it doesn't void their lien. They still have a lien; there's no question about it. But whatever amount is secured by that lien is reduced by the amounts that they precluded themselves from receiving through this confirmed plan. That's what they lose. That's what happens when a secured claim holder decides to disable itself to

---

[2] It appears this refund was due in part to the fact that the plan contemplated payments to the Bank on the mortgage loans at issue but that those payments were not disbursed to the Bank due to the Bank's failure to file proofs of claim.

[3] Hereinafter cited as "Jan. 7, 2014 Tr."

receive payments under a confirmed plan when they have a debt that's provided for under 1322(b)(5) by curing default and maintaining payments through the plan. They don't lose their lien, they just simply can't collect the amounts the plan calls for that will be paid. That's what happens. They don't, in other words, get to disable the plan and then come back later and get their cake and eat it, too.

(Jan. 7, 2014 Tr. 76:19-77:6.)

The outcome for Bank of America is it still has a lien. It's properly perfected and it secures a debt that's reduced by the amounts that it refused to take through this Chapter 13 plan that the Debtors tendered from confirmation through the entry of discharge in this case. I'll throw in that under 1328(a) there's another reason why the lien is not discharged and that is that its excepted from discharge. A debt that is provided for under 1322(b)(5) is (inaudible) to discharge.

(Jan. 7, 2014 Tr. 79:13-21.)

On April 14, 2014, the bankruptcy court entered an order granting in part and denying in part each of the motions for summary judgment. The order stated in pertinent part:

2. Plaintiffs' request to void the liens securing the first mortgages on the Lylewood Road and Arctic Avenue properties is denied.
3. The Lylewood Road and Arctic Avenue loans are nondischargeable debts pursuant to Section 1328(a) of the Bankruptcy Code.
4. The amount of the debt owed under the Lylewood Road first mortgage is reduced by the amount of $16,661.68, the amount that would have been paid to Bank of America had it filed a proof of claim with respect to the loan secured by the Lylewood Road first mortgage.
5. The amount of the debt owed under the Arctic Avenue first mortgage is reduced by the amount of $14,121.22, the amount that would have been paid to Bank of America had it filed a proof of claim with respect to the loan secured by the Arctic Avenue first mortgage.

(Order On Cross Motions For Summary Judgment, *Matteson,* No 13-90245, ECF No. 40.)

Bank of America timely filed this appeal asserting that the bankruptcy court erred in reducing the amount of debt owed under the two mortgages.

## DISCUSSION

With some exceptions, completion of a chapter 13 plan discharges a debtor's obligation on debts included in the plan. 11 U.S.C. §1328.[4] One exception to this rule is long-term debts provided for under 11 U.S.C. § 1322(b)(5).[5] 11 U.S.C. § 1328(a)(1). In their plan, the Debtors specifically listed the two debts at issue as long-term debts provided for under 11 U.S.C. § 1322(b)(5). The Order Confirming Chapter 13 Plan entered in the case also stated that the mortgage loans were long-term debts. Accordingly, completion of the chapter 13 plan in this case did not discharge the Debtors' obligation to the Bank as to the two mortgage loans at issue.

As the Eighth Circuit recognized in *FDIC v. Union Entities* (*In re Be-Mac Transp. Co., Inc.*), 83 F.3d 1020 (8th Cir. 1996),

> [a] well-established principle of bankruptcy law is that liens pass through bankruptcy proceedings unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773, 778, 116 L. Ed.2d 903 (1992); *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S. Ct. 917, 918, 29 L. Ed. 1004 (1886). This means that a secured creditor need not file a claim in a bankruptcy proceeding to preserve its lien. *See Tarnow*, 749 F.2d at 465–66. Rather, a creditor with a loan secured by a lien on a debtor's assets *may ignore the bankruptcy proceeding* and look to the lien for the satisfaction of the debt. *Id*. at 465.

*Id*. at 1025 (8th Cir. 1996) (emphasis added); *see also Hamlett v. Amsouth Bank* (*In re Hamlett*), 322 F.3d 342, 347-48 (4th Cir. 2003). The bankruptcy court acknowledged this principle in its oral decision, making a point to clarify that the court was not reducing the lien itself, but rather the amount of debt that the Debtors owed the Bank under the two mortgages. As justification for this

---

[4] Section 1328(a) provides in pertinent part:
[A]s soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt – (1) provided for under section 1322(b)(5) . . . ."

[5] Section 1322(b)(5) provides in pertinent part:
"Subject to subsections (a) and (c) of this section, the plan may – (5) . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due . . . ."

reduction, the court noted the remedy envisioned by Congress when it promulgated the Bankruptcy Reform Act of 1978 and fashioned the modern chapter 13 proceeding. The court opined that it would contravene the intent of Congress if a creditor could scuttle a debtor's effort to reorganize by merely refusing to file a proof of claim. Observing that the Bank's debt would have been reduced through operation of the plan if the Bank had filed a proof of claim, the bankruptcy court ruled that confirmation of the plan and the discharge reduced the Bank's debt even though the Bank was not paid any sums on account of the debt. The Panel could not find any legal justification or basis for this result.

During its oral ruling, the bankruptcy court repeatedly called this "an *Espinosa* case," referring to the principle that a creditor is bound by the provisions of a confirmed plan, even if inconsistent with statutory law. (Jan 7, 2014 Tr. 69:1; 76:15.) *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). The bankruptcy court's reliance on *Espinosa* is misplaced. There is no provision, lawful or unlawful, of the Debtors' confirmed chapter 13 plan for the court to enforce upon the Bank which mandates the result reached by the bankruptcy court. The Debtors in this case intended to reduce the debts owed to the Bank by making payments through the plan. Reduction of debt through plan payments is both lawful and typical in a chapter 13 plan.[6] Moreover, that a proof of claim must be filed in order to trigger the right to receive payments under the plan is not only lawful and typical, but required by the plan. The plan provision which required the filing of a proof of claim in order to receive payments under the plan was enforced against the Bank, resulting in the Bank receiving no payments through the plan. However, there was no provision that explicitly provided that the debt owed to the Bank would be reduced whether or not it received payments. To the contrary, the plan specifically provided for the mortgages at issue as long term debt pursuant to 11 U.S.C. § 1322(b)(5). Therefore, those debts are non-dischargeable pursuant to

---

[6] If the plan had explicitly provided for reduction of the debt without any payments, such a provision might have conflicted with the plan's treatment of the debt as a non-dischargeable long-term debt, and may have been an unlawful provision. However, there was no such provision in the confirmed plan, so the Panel will not address whether or not such a provision would be binding under the principles of *Espinosa*.

11 U.S.C. § 1328(a). The bankruptcy court interpreted the plan in a way that effectively discharged part of the debt without payment. But the principles articulated by the court in *Espinosa* do not provide legal justification for the bankruptcy court's conclusion. The bankruptcy court erred by interpreting the plan as requiring a reduction of the Bank's debt as a consequence of its failure to file a proof of claim when the plan itself did not specifically impose such a result and treated the debt as long-term debt.

The bankruptcy court's decision also appears to contemplate an equitable basis for its result by briefly mentioning the concept of judicial estoppel. Ordinarily, bad faith is a necessary element for the application of judicial estoppel. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476–79 (6th Cir.2010); *In re Simmerman*, 463 B.R. 47, 59 (Bankr. S.D. Ohio 2011) ("[I]ntentional misconduct is a necessary element" for judicial estoppel.) In the case on appeal, there is no allegation anywhere in the record that the Bank acted in bad faith. The only action it took during this case was its decision not to file a proof of claim. By itself, this strategic decision does not rise to the level of bad faith. In fact, the Bankruptcy Code and Rules countenance such inaction.

Section 501(a) of the Bankruptcy Code provides that any creditor **may** file a proof of claim. Federal Rule of Bankruptcy Procedure 3002(a) requires only unsecured creditors to file a proof of claim for the claim to be allowed. Secured creditors "are not required to file a proof of claim solely to preserve their lien." *In re Nwonwu*, 362 B.R. 705, 708 (Bankr. E.D. Va. 2007) (examining late filed proof of claim). And § 506(d) provides that a lien securing a claim is void if the claim is not an allowed secured claim, unless the claim "is not an allowed secured claim due only to the failure ... to file a proof of such claim . . . ." 11 U.S.C. § 506(d); *see also Hamlett v. Amsouth Bank* (*In re Hamlett*), 322 F.3d 342, 349 (4th Cir. 2003) (bank's lien was not subject to avoidance simply because its claim was disallowed on the ground that the proof of claim was filed after the claim bar date); *Universal Am. Mortg. Co. v. Bateman* (*In re Bateman*), 331 F.3d 821, 827 (11th Cir. 2003) (holding that secured creditors are not required to file proof of claims to maintain their interests); *Interstate Fin. Corp. v. Scrogham*, 265 F.2d 889, 892 (6th Cir. 1959) (secured creditor is "not required to file a proof of claim in order to protect its security."); *see also PCFS Fin. v. Spragin* (*In re Nowak*), 586 F.3d 450, 455 (6th Cir. 2009) (citing § 506(d) and Bankruptcy Rule 3002(a) in

observing that a "secured creditor is usually not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches."); *State Bank of Florence v. Miller* (*In re Miller*), 513 F. App'x 566, 570 (6th Cir. 2013) ("Ordinarily, a secured creditor like the Bank is 'not required to file a proof of claim to maintain its interest in the collateral to which its security interest attaches[.]' " (citing *Nowak*, 586 F.3d at 455-56)). In the case currently before the Panel, nothing in the Bankruptcy Code, the Rules or the confirmed chapter 13 plan required the Bank to file a proof of claim in order to preserve its secured status or the balance outstanding on its loans. Accordingly, the Bank's failure to file a claim by itself is not, and cannot be, an indication of bad faith.

Although a secured creditor is not required to file a proof of claim in order to preserve its lien, its failure to do so affects its right to receive payment under a chapter 13 plan. *See In re Arnold*, No. 06-10671-SSM, 2007 WL 634242, at *4 (Bankr. E.D. Va. Feb. 26, 2007) ("Although a secured creditor is not required to file a proof of claim in order to preserve its lien, [Bankruptcy] Rule 3002(c) does not exclude secured creditors from the need to file a proof of claim prior to the bar date in order to receive a distribution under the plan.") "The Bankruptcy Rules do not state a specific consequence for a secured creditor's failure to file a proof of claim and it is generally said that, after the bankruptcy, they may look to their collateral for satisfaction of the secured claim." *In re Baldridge*, 232 B.R. 394, 396 (Bankr. N.D. Ind. 1999) (citing *In re Tarnow*, 749 F.2d 464 (7th Cir. 1984) and *In re Schaffer*, 173 B.R. 393, 395 (Bankr. N.D. Ill. 1994)).

Perhaps this is the reason that debtors and trustees are accorded an opportunity to file a proof of claim on a creditor's behalf pursuant to 11 U.S.C. §501(c) and Federal Rule of Bankruptcy Procedure 3004. Section 501(c) states: "If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c). Rule 3004 provides:

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.

10

Fed. R. Bankr. P. 3004. In the context of a chapter 13 case, this ensures that the plan can operate effectively to cure defaults and pay obligations of the debtor.

In the case before the Panel, the Bank admits that the confirmed plan required filing a proof of claim as a condition precedent to receiving payment under the plan. Since it failed to do this for either of the two mortgage loans at issue, the Bank concedes that it waived its right to payment under the Debtors' plan. This election not to participate in the chapter 13 plan, however, did not result in the Bank's waiver of its right to payment on the debt. To avoid default on the Bank's mortgage loans, the Debtors were still required to service the debt, if not through the plan, then by making payments outside the plan. The Debtors failed to do this. Consequently, the Debtors exited the bankruptcy case in default on the Lylewood Road Mortgage loan and the Arctic Avenue Mortgage loan. The Bank therefore has the right to collect payment on the debt by executing on the collateral pursuant to state law. *See In re Kressler*, 252 B.R. 632, 633 (Bankr. E.D. Pa. 2000) *aff'd*, 40 F. App'x 712 (3d Cir. 2002) ("[T]he failure of a secured creditor to file a proof of claim will not result in the loss of the creditor's lien and generally speaking, after the bankruptcy case is concluded, the creditor may pursue the collateral to satisfy its lien[.]" (citations omitted)).

The Debtors and the Trustee had an equal opportunity to ensure that the plan operated effectively to cure the defaults and pay the debts to the Bank in accordance with the loan documents. Either the Debtors or the Trustee could have filed a proof of claim on the Bank's behalf. If either the Debtors or the Trustee had filed a proof of claim on behalf of the Bank, then the Trustee would have made the plan payments as contemplated, and the Debtors would not have exited bankruptcy in default on the Bank's debt. Thus, both the Debtors and the Trustee had the capability of avoiding the result that occurred. Moreover, excess cash of more than $9,000 was returned to the Debtors after the plan was consummated. The Debtors completed their plan early because the Bank did not receive payments on the two loans at issue. The Debtors did not suffer a loss due to the Bank's failure to file proofs of claim with regard to the two mortgage loans. In fact, if the bankruptcy court's decision to reduce the debt were affirmed, the Debtors would gain a windfall in that they would receive a reduction of the debt while receiving a refund of monies paid into the plan for

remittance to the Bank. Accordingly, there is no equitable basis for the result reached by the bankruptcy court.

The Panel concludes that because the Debtors and the Trustee had the power to file a proof of claim on behalf of the Bank, thus allowing the plan to operate as intended, and because the plan itself did not provide any modification of the Bank's liens or the discharge of the debt, the bankruptcy court erred by reducing the amount of debt owed to the Bank.

**CONCLUSION**

The bankruptcy court's order held that the Bank's mortgage loans are non-dischargeable pursuant to 11 U.S.C. § 1328(a), but yet reduced the balance of each loan by the amount that the Bank would have been paid through the plan had it filed a proof of claim. The Panel finds no justification for the reduction of the debt, and therefore reverses the bankruptcy court's order to this extent. The order on cross motions for summary judgment is AFFIRMED in part and REVERSED in part.

The following paragraphs of the bankruptcy court's order are reversed:

1. The motions for summary judgment are each granted in part and denied in part.

4. The amount of the debt owed under the Lylewood Road first mortgage is reduced by the amount of $16,661.68, the amount that would have been paid to Bank of America had it filed a proof of claim with respect to the loan secured by the Lylewood Road first mortgage.

5. The amount of the debt owed under the Arctic Avenue first mortgage is reduced by the amount of $14,121.22, the amount that would have been paid to Bank of America had it filed a proof of claim with respect to the loan secured by the Arctic Avenue first mortgage.

The following paragraphs are affirmed:

> 2. Plaintiff's request to void the liens securing the first mortgages on the Lylewood Road and Arctic Avenue properties is denied.
>
> 3. The Lylewood Road and Arctic Avenue loans are nondischargeable debts pursuant to Section 1328(a) of the Bankruptcy Code.
>
> 6. Plaintiffs' request for attorneys' fees is denied.

The case is REMANDED to the bankruptcy court for entry of a judgment consistent with this ruling.