*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 19b0003n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

---

IN RE: BX ACQUISITIONS, INC.,

*Debtor.*

---

SCOTT E. EISENBERG, as Trustee of the BX
Acquisitions, Inc. Liquidating Trust,

*Plaintiff-Appellant*,

*v.*

TOLEDO-LUCAS COUNTY PORT AUTHORITY,

*Defendant-Appellee*.

No. 18-8014

---

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Toledo.
No. 15-33538; Adv. No. 17-03024—John P. Gustafson, Judge.

Decided and Filed: April 19, 2019

Before: HARRISON, OPPERMAN, and WISE, Bankruptcy Appellate Panel Judges.

---

### COUNSEL

**ON BRIEF:** Robert Michaels, GOLDSTEIN & MCCLINTOCK LLLP, Chicago, Illinois,
Patricia Fugée, FISHER BROYLES, LLP, Perrysburg, Ohio, for Appellant. Michael W. Bragg,
Jennifer A. McHugh, SPENGLER NATHANSON P.L.L., Toledo, Ohio, for Appellee.

—————————————

**OPINION**

—————————————

MARIAN F. HARRISON, Bankruptcy Appellate Panel Judge.  Scott E. Eisenberg, the Liquidating Trustee ("Trustee"), appeals from the bankruptcy court's decision granting summary judgment to Toledo-Lucas County Port Authority ("Port Authority"), dismissing the Trustee's claim to avoid and recover post-petition transfers, and denying the Trustee's cross-motion for summary judgment.

**ISSUES ON APPEAL**

Whether the Debtor's disputed post-petition payments to the Port Authority were authorized by agreed Cash Collateral Orders, and whether the Cash Collateral Orders were binding on the Trustee.

**JURISDICTION**

The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (citations and internal quotations omitted).  The granting of a motion for summary judgment to one party and denying it to another is a final order.  *Rogan v. Fifth Third Mortg. Co.* (*In re Rowe*), 452 B.R. 591, 593 (B.A.P. 6th Cir. 2011).

**STANDARD OF REVIEW**

Generally, the granting of summary judgment is reviewed *de novo*.  *Dymarkowski v. Savage* (*In re Hadley*), 561 B.R. 384, 388 (B.A.P. 6th Cir. 2016).  "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination."  *Matteson v. Bank of Am., N.A.* (*In re Matteson*), 535 B.R. 156, 159 (B.A.P. 6th Cir. 2015) (citations omitted).  In this case, however, the bankruptcy court's decision

was based on an interpretation of its prior orders, and a review of such is for clear abuse of discretion. *East Coast Miner LLC v. Nixon Peabody LLP* (*In re Licking River Mining, LLC*), 911 F.3d 806, 810 (6th Cir. 2018) (citing *Enodis Corp. v. Emp'rs Ins. of Wausau* (*In re Consol. Indus. Corp.*), 360 F.3d 712, 716 (7th Cir. 2004)).

## FACTS

BX Acquisitions, Inc. ("Debtor") was a Delaware corporation that provided customized logistics solutions to the transportation and distribution industries. Its principal place of business was located at One Air Cargo Parkway East, Swanton, Ohio, an intermodal cargo sort facility ("Facility"), owned and managed by the Port Authority.

On October 31, 2011, the Debtor entered into a Facilities and Services Management Agreement ("Management Agreement") with the Port Authority that outlined the relationship between the parties as it pertained to the Debtor's use of the Facility. The Management Agreement provided that in exchange for the Debtor's use, management, and maintenance of the Facility, the Debtor would pay the Port Authority: (1) a periodic fixed annual fee ("Fixed Fee"), due semiannually in 2012 and 2013 and then monthly beginning in 2014; and (2) a percentage-based fee based on the Debtor's gross annual revenues. Beginning in 2014, the parties operated under a Third Amendment to the Management Agreement. The Third Amendment, finalized in July 2015, provided that instead of periodic Fixed Fee payments, the Debtor would pay the Port Authority a Fixed Fee of $500,000 on or before December 31 of each contract year. Although not signed by the parties, the Debtor and the Port Authority treated the Third Amendment as effective and binding until it was later rejected during the course of the Debtor's bankruptcy.

Per the uncontroverted affidavit of the Port Authority's general counsel, Dawn M. Wenk, "[u]nder the terms of the Third Amendment, BX owed the Port Authority a fee of $500,000.00 by December 31, 2015. BX was entitled to take a credit against that payment in the amount of $350,000.00." [Aff. of Dawn M. Wenk, Esq., at 2, Adv. P. 17-03024 ECF No. 30, Exh. A]. Ms. Wenk also maintained that the Debtor paid the 2014 Fixed Fee via a single annual payment as required under the Third Amendment and had not made the 2015 Fixed Fee payment as of the date of bankruptcy filing. Further, Ms. Wenk stated in her affidavit that the Debtor

communicated with the Port Authority post-petition regarding the Debtor's intent to assume the Management Agreement during the course of its Chapter 11 proceedings and eventually extend its terms.

On November 2, 2015, the Debtor filed a voluntary Chapter 11 petition that included reference to the Port Authority and the Management Agreement on Schedule G, "Executory Contracts and Unexpired Leases." On that same day, the Debtor filed a Motion to Use Cash Collateral with an attached budget, running from November 1, 2015, through December 31, 2015. The motion did not include any payments intended for the Port Authority, either in the motion or the attached budget. The bankruptcy court entered an order shortening the time for notice to one day. The first cash collateral hearing was held on November 3, 2015, and the bankruptcy court's proceeding memo reflected that the parties were "to circulate and submit an agreed Order." [Proceeding Memo, Bankr. Case No. 15-33538, ECF No. 13]. The Agreed First Interim Order for use of cash collateral, adequate protection, and setting an additional hearing was entered on November 4, 2015. Notwithstanding the absence of a payment to the Port Authority in the motion and its attached budget, the Agreed First Interim Order included a budgeted payment to the Port Authority of $208,685.45 on December 30, 2015.

On November 4, 2015, prior to the second cash collateral hearing on November 10, 2015, notice went out to the creditors. The notice included the text of an Agreed Second Interim Order authorizing the use of cash collateral and a budget which included a payment of $208,685.45 to the Port Authority. The Notice Regarding Entry of Agreed Second Interim Order stated:

> A copy of this proposed order and the related budget is attached hereto. A hearing is to be set by the Court on the entry of this Order for November 10, 2015, at 11:00 A.M., at the United States Bankruptcy Court for the Northern District of Ohio, 1716 Spielbusch Avenue, Courtroom No. 2, Toledo, OH.
>
> Notice is hereby given that any party wishing to object to the entry of the Second Interim Agreed Order for the Use of Cash Collateral should attend this hearing and/or file an objection to the entry of the Order. Any Objection should be filed with the Clerk of the Court and served on counsel for the Debtor and the Office of the U.S. Trustee, prior to the time of the hearing set by the Court on the matter; otherwise, the Court may deem any opposition waived, and issue an order granting the requested relief without further notice of hearing.

[Notice at 2, Bankr. Case No. 15-33538, ECF No. 14]. The proposed Agreed Second Interim Order attached to the Notice also stated: "To the extent any provision of this Interim Order conflicts or is inconsistent with any provision prior [sic] Motion, the provisions of this Interim Order shall control." [Proposed Order at 12, Bankr. Case No. 15-33538, ECF No. 14-1]. When the final version of the Agreed Second Interim Order was submitted, it included the same $208,685.45 payment in the budget. The bankruptcy court entered the Agreed Second Interim Order on November 10, 2015, after the hearing that day. Both Cash Collateral Orders provided:

> **7. *Findings Regarding the Use of Cash Collateral and Pre-petition Collateral.***
>
> (a) Good cause has been shown for immediate entry of this Interim Order.
>
> (b) The Debtor has an immediate and critical need to use the Cash Collateral in which it has an interest. Authorization to use the Cash Collateral is therefore (i) critical to the Debtor's ability to maximize the value of its chapter 11 estate, (ii) in the best interests of the Debtor and its estate, and (iii) necessary to avoid immediate and irreparable harm to the Debtor, its creditors, and its assets, businesses, goodwill, reputation, and employees.
>
> (c) The terms of the use of the Cash Collateral pursuant to this Interim Order are fair and reasonable solely for purposes of this Interim Order, and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.
>
> (d) The Lender has consented to, conditioned upon entry of this Interim Order, the Debtor's proposed use of the Cash Collateral on an interim basis, on the terms and conditions set forth in this Interim Order.
>
> (e) The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length between the Debtor and the Lender, and the Lender's consent to the Debtor's use of its Cash Collateral on an interim basis in accordance with the terms of this Interim Order shall be deemed to have been made in "good faith."
>
> **8. *Authorization of Use of Cash Collateral.*** The Debtor is hereby authorized to use Cash Collateral . . . solely in accordance with the Budgets (as defined herein) and the other terms and conditions set forth in this Interim Order.

[First Interim Order at 4-5, Bankr. Case No. 15-33538, ECF No. 15; Second Interim Order at 4-5, Bankr. Case No. 15-33538, ECF No. 39].

Attached to both Agreed Interim Cash Collateral Orders was a budget that provided for the Debtor's payment to the Port Authority in the amount of $208,685.45 on December 30, 2015, though neither the Orders nor the attached budgets identified the payment to the Port Authority

as being for a pre-petition obligation. Both Cash Collateral Orders provided for service of notice on: (1) the U.S. Trustee; (2) the U.S. Attorney for the Northern District of Ohio; (3) the cash collateral lender, Alder Fels Group, LLC ("Alder Fels"); (4) the lender's counsel; (5) the Debtor's 20 largest unsecured creditors; (6) the Internal Revenue Service; and (7) all other parties who made an appearance and request for notice in the Debtor's Chapter 11 case. There were no objections, motions for reconsideration, or appeals of either Agreed Interim Cash Collateral Order.

On November 6, 2015, the Debtor also filed motions to pay critical vendors and to pay pre-petition employee wages, each of which identified the extent to which they related to the payment of the Debtor's pre-petition obligations. Without opposition, both motions were granted on November 10, 2015.

On November 18, 2015, a Creditors' Committee ("Committee") was appointed, and counsel for the Committee filed an entry of appearance on November 25, 2015. An Application to Employ counsel for the Committee was filed on December 7, 2015, along with an Application to Employ a financial advisor.

After the Committee was appointed, the Debtor made post-petition payments of $50,000 to the Port Authority on November 27, 2015, December 2, 2015, and December 3, 2015, totaling $150,000 ("Disputed Payments"), an amount that both parties regarded as satisfying the Debtor's 2015 Fixed Fee obligation under the Management Agreement and Third Amendment. The Committee did not seek reconsideration or object to the payments being made to the Port Authority.[1]

As the case continued, it became apparent that the Debtor could not reorganize, and on January 31, 2016, the Debtor filed a Motion to Reject Lease or Executory Contract. The Debtor asserted that, in its business judgment, it would be financially burdensome for the Debtor to continue to operate under the Management Agreement given that the Debtor had ceased its

---

[1]The Trustee is only seeking to avoid transfers amounting to $101,000 because there is no dispute regarding the bankruptcy court's allowance of the Port Authority's administrative expense claim in the amount of $49,000. Presumably, the payment of $150,000 instead of $208,685.45 to the Port Authority was the result of a negotiated reduction.

logistics business operations.  The bankruptcy court granted the Debtor's Motion to Reject on April 27, 2016 ("Rejection Decision").  The Agreed Order of Rejection, entered on May 2, 2016, provided that: (1) the Port Authority was entitled to an administrative claim of $49,000, comprised of $25,000 for the Debtor's use of the Facility during November and December of 2015 and $24,000 for the Debtor's use of the Facility during January of 2016; (2) the Debtor's estate retained its ability to challenge any allegedly improper post-petition payments the Debtor made to the Port Authority; and (3) the Management Agreement was deemed rejected as of January 15, 2016.

The bankruptcy court confirmed the Debtor's Joint Plan of Liquidation on October 11, 2016, which provided for, among other things, the establishment of the BX Acquisitions, Inc. Liquidating Trust ("Trust") and the appointment of a Liquidating Trustee.  On December 8, 2016, the Debtor filed a Liquidating Trust Agreement through which the Trustee was appointed as Liquidating Trustee.  The Trustee filed the complaint underlying this Adversary Proceeding on March 17, 2017.  In the complaint, the Trustee alleges that: (1) the $150,000 in Disputed Payments made to the Port Authority in late November and early December of 2015 constituted unauthorized, post-petition transfers subject to avoidance under 11 U.S.C. § 549; and (2) these transfers, once avoided, were subject to recovery by the Trustee under 11 U.S.C. § 550.

In its answer to the complaint, the Port Authority maintained that: (1) the Debtor's November and December of 2015 payments were authorized by the Agreed Interim Cash Collateral Orders; and (2) even if not authorized by the Agreed Interim Cash Collateral Orders, said payments were post-petition payments on a post-petition debt that were made in the ordinary course of the Debtor's business and were thus a proper exercise of the Debtor's authority to operate as a going concern.

The Trustee and the Port Authority filed cross-motions for summary judgment on November 10, 2017.  In the Trustee's motion, he argued that the Disputed Payments were not authorized by the Bankruptcy Code because the acts giving rise to the Debtor's obligation to the Port Authority took place pre-petition. Thus, the Disputed Payments were post-petition transfers on account of a pre-petition debt.  The Trustee also argued that the Disputed Payments were not authorized by the Agreed Interim Cash Collateral Orders because: (1) the Agreed Interim Cash

Collateral Orders failed to provide interested parties with proper notice that payments on a pre-petition debt were being authorized; and (2) finding the Disputed Payments were authorized by the Agreed Interim Cash Collateral Orders conflicts with language contained in the bankruptcy court's decision granting Debtor's Motion to Reject the Management Agreement.[2]  The Port Authority argued that the Disputed Payments are not avoidable because they were post-petition payments on a post-petition debt paid in the ordinary course of the Debtor's business.  The Port Authority further argued that, even if the Disputed Payments were regarded as having been made on account of pre-petition debt, they were expressly authorized by the Agreed Interim Cash Collateral Orders and attached budgets.  Further, the Port Authority asserted that allowing the Trustee to avoid and recover the Disputed Payments would create uncertainty for creditors in Chapter 11 cases and be detrimental to the reorganization process.

Based on the pleadings and the argument of counsel, the bankruptcy court granted the Port Authority's motion for summary judgment after concluding that:

> Although the Cash Collateral Orders could have, and should have, been more explicit with regards to the nature of the payments being authorized, the record reflects that both Orders sufficiently set forth and described the Disputed Payments as being necessary to Debtor's attempt at reorganization.  Further, the fact that Debtor's payments to Defendant were authorized by *two* agreed Cash Collateral Orders, both of which were entered after hearings, and were noticed to creditors and other parties in interest, suggests that all record parties of interest were afforded sufficient opportunity to object to the Disputed Payments before they were made.  The proposed Second Interim Order was sent out as an Exhibit to all creditors and parties in interest before the hearing.  No objections were raised, nor was either Cash Collateral Order appealed or subject to a request for reconsideration.  Thus, because there was sufficient notice prior to the entry of the Second Interim Order, it provided court authorization of Debtor's payments to Defendant under 11 U.S.C. §§ 363 and 365, and prevents the court from finding that the payments were "not authorized" under 11 U.S.C. § 549(a)(2)(B).

---

[2]As to this last argument, the bankruptcy court found that the Trustee's reference to the phrase "preserving the estate's ability to seek disgorgement of approximately $150,000 that the Port Authority received post-petition for pre-petition rent" in the Rejection Decision was taken out of context.  "[T]he court's reference to the [Committee's] assertion during the course of providing the Rejection Decision with a factual background was just that, a reference, and is irrelevant to whether the Cash Collateral Orders authorized the Disputed Payments." *Eisenberg v. Toledo-Lucas County Port Authority* (*In re BX Acquisitions, Inc.*), 588 B.R. 798, 811 (Bankr. N.D. Ohio 2018).

*In re BX Acquisitions*, 588 B.R. at 811.  Regarding whether the Disputed Payments were made on account of a pre-petition or post-petition debt, the bankruptcy court stated:

> The court does not reach the question of whether the Disputed Payments were made on account of a pre-petition debt because the Cash Collateral Orders, particularly the Second Interim Order, [were] a court authorization of the Disputed Payments.  However, for purposes of addressing the Motions for Summary Judgment, the court construes the Disputed Payments as being on account of a pre-petition debt.

*Id.* at 808 n.13.

## DISCUSSION

Pursuant to 11 U.S.C. § 549(a), a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case if it is "not authorized under this title or by the court." Avoidance under this provision requires the establishment of four elements: "1) that the unauthorized transfer occurred after the commencement of the case; 2) that the transfer involved property of the estate; 3) that the Debtors transferred the property; and 4) that the transfer was not authorized by the court or the Bankruptcy Code." *Slone v. Anderson* (*In re Anderson*), 511 B.R. 481, 497 (Bankr. S.D. Ohio 2013) (citing *Cohen v. KDC Fin. Servs., Inc.* (*In re Miller Mining, Inc.*), 219 B.R. 219, 221–22 (Bankr. N.D. Ohio 1998)).  Only if a transfer is avoided may a trustee recover, for the benefit of the estate, the amounts transferred.  11 U.S.C. § 550(a).

The dispute here concerns only the last element.  In the present case, the transfers were made pursuant to the Agreed Interim Cash Collateral Orders.  A "cash collateral order is a kind of consent decree 'construed for enforcement purposes as [a] contract.'" *Ohio Farmers Ins. v. Hughes-Bechtol, Inc.* (*In re Hughes-Bechtol, Inc.*), 225 F.3d 659 (Table), 2000 U.S. App. LEXIS 18741, at *9  (6th Cir. July 27, 2000) (citing *Stotts v. Memphis Fire Dept.*, 679 F.2d 541, 557 (6th Cir. 1982)).  The Sixth Circuit has recognized that principles of contract interpretation "first require looking to the explicit language of, in this case, the cash collateral order for 'clear manifestations of intent.'" *Id.* at *10 (citations omitted).  Review of the contract, "including statutory construction of provisions of the Bankruptcy Code as applied to the contract," is *de novo*. *Licking River Mining, LLC*, 911 F.3d at 810 (citation omitted).  Review of a bankruptcy court interpreting its own prior orders and acts is for clear abuse of discretion. *Id.*

The Agreed Interim Cash Collateral Orders and attached budgets clearly reflect the intent to pay the Port Authority on December 30, 2015, pursuant to the Management Agreement. The bankruptcy court reviewed and approved the Agreed Interim Cash Collateral Orders and attached budgets, and the Agreed Second Interim Order became final. The bankruptcy court did not abuse its discretion in holding that its own orders authorized the Disputed Payments. The only remaining issue is whether proper notice was given to parties in interest.

Pursuant to 11 U.S.C. § 1107(a), a debtor-in-possession is granted the powers of a trustee. It follows that "an agreement made by a debtor-in-possession that is set forth in an agreed cash collateral order generally will—unless the order expressly states otherwise—be binding" on a subsequently appointed trustee. *Terlecky v. Peoples Bank, N.A.* (*In re Amerigraph, LLC*), 456 B.R. 349, 357 (Bankr. S.D. Ohio 2011). *See also Pollack v. FDIC* (*In re Monument Record Corp.*), 71 B.R. 853, 862 (Bankr. M.D. Tenn. 1987) ("The courts recognize that the acts of the debtor-in-possession generally bind a subsequently-appointed trustee."); *Hunter v. Society Bank & Trust* (*In re Parker Steel Co.*), 149 B.R. 834, 856 (Bankr. N.D. Ohio 1992) (A party should be permitted to rely on the post-petition payments, authorized by the cash collateral order, as being final.).

Nevertheless, this general rule applies "only if proper notice of the debtor-in-possession's agreement is provided to parties in interest." *Amerigraph*, 456 B.R. at 357. As noted in *Amerigraph*, courts applying this rule first determine whether adequate notice has been provided in deciding the binding effect of an order. *See Hill v. Akamai Techs., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1134 (10th Cir. 2007) (describing steps that had been taken to provide effective notice to creditors of agreed cash collateral order); *In re Bettis*, 97 B.R. 344, 347 (Bankr. W.D. Tex. 1989) (Chapter 7 Trustee was bound by stipulation of debtor-in-possession where, among other things, "full notice" of the stipulation was provided); *Monument Record*, 71 B.R. at 856 (Chapter 11 Trustee was bound by agreed order stipulated to by debtor-in-possession prior to appointment of the trustee after finding that "[t]here were no deficiencies of notice."). Other courts have declined to apply the rule after finding that notice was inadequate. *See Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.* (*In re Int'l Fibercom, Inc.*), 503 F.3d 933, 945 (9th Cir. 2007) (The Chapter 7 Trustee was not bound by debtor-in-possession's court-approved assumption of

insurance policy because notice provided in connection with the assumption motion "violated the bankruptcy court's notice and conspicuousness requirements."); *In re Buzzworm*, 178 B.R. 503, 513–14 (Bankr. D. Colo. 1994) (order approving cash-collateral stipulation pursuant to which the debtor-in-possession waived certain rights was not binding on the Chapter 7 Trustee where the notice provided to creditors did not adequately disclose the rights being waived); *In re Delafield Dev.*, 54 B.R. 442, 444-45 (Bankr. E.D. Wis. 1985) (court-approved stipulation by debtor-in-possession providing for the full payment of certain claims was not binding on the Chapter 7 Trustee where notice of the stipulation was not provided to other creditors); *Begier v. Am. Express, Inc.* (*In re Am. Int'l Airways, Inc.*), 74 B.R. 691, 696 (Bankr. E.D. Pa. 1987) (rejecting defendant's argument that a stipulation into which the debtor-in-possession had entered required dismissal of an action commenced by the Chapter 11 Trustee because, among other things, notice of the stipulation was insufficient).

The Agreed Interim Cash Collateral Orders, the attached budgets, and the related hearings gave parties in interest sufficient notice under 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 2002 and 4001. As with most expedited motions to use cash collateral, the hearings were set on shortened notice. However, Federal Rules of Bankruptcy Procedure 2002(a)(2) and 4001(b)(2) both allow courts to expedite proceedings "for cause" and "as is necessary to avoid immediate and irreparable harm to the estate," respectively. The bankruptcy court expressly acknowledged the emergency nature of the early Chapter 11 proceedings and the importance of adequate notice at both cash collateral hearings.

On November 2, 2015, the Debtor filed its voluntary Chapter 11 petition and an expedited motion to use cash collateral. The budget attached to the initial motion did not include the Port Authority payment. The hearing was held on November 3, 2015. Counsel for the debtor, Alder Fels, Signature Bank, and the U.S. Trustee were all in attendance. Per the memo of proceeding, the parties were instructed to circulate and submit an agreed order.

The Agreed First Interim Cash Collateral Order was submitted, signed, and entered on November 4, 2015. Attached to this order was an interim budget which included the payment to the Port Authority of $208,685.45 to be made on December 30, 2015. That same date, notice of the second cash collateral hearing (set for November 10, 2015) went out to creditors. Notice was

sent electronically to three parties (Alder Fels, the Debtor, and the U.S. Trustee) and sent by first class mail to 73 creditors. Included in the notice was the text of the proposed Agreed Second Interim Cash Collateral Order authorizing the use of cash collateral and an attached budget which provided for the payment to the Port Authority of $208,685.45 to be made on December 30, 2015. The notice also provided that "any party wishing to object to the entry of the Second Interim Agreed Order for the Use of Cash Collateral should attend this hearing and/or file an objection to the entry of the Order." [Notice at 2, Bankr. Case No. 15-33538, ECF No. 14].

On November 10, 2015, the second cash collateral hearing was held. The Debtor's motions to pay critical venders and pre-petition wages were also heard on that date and granted without objection. At the hearing, counsel for the Debtor stated that appropriate notice had been given, Alder Fels' attorney indicated that he had not received any objections, and the U.S. Trustee stated that it had no objection. The final version of the Agreed Second Interim Cash Collateral Order, which again included the same $208,685.45 payment to the Port Authority in the attached budget, was submitted, signed, and entered that same day.

The Cash Collateral Orders required the Debtor to comply with the attached budgets and to use its cash collateral in accordance with those budgets. In fact, the bankruptcy court determined that authorizing the Debtor to use cash collateral, as set out in the attached budgets, was "(i) critical to the Debtor's ability to maximize the value of its chapter 11 estate, (ii) in the best interests of the Debtor and its estate, and (iii) necessary to avoid immediate and irreparable harm to the Debtor, its creditors, and its assets, businesses, goodwill, reputation, and employees." [First Interim Order at 4, Bankr. Case No. 15-33538, ECF No. 15; Second Interim Order at 4, Bankr. Case No. 15-33538, ECF No. 39]. Moreover, as noted by the bankruptcy court, the Debtor included reference to its Management Agreement with the Port Authority in its initial Chapter 11 filing on November 2, 2015, which further bolstered the bankruptcy court's conclusion that parties in interest were on notice that the Debtor would be making payments to the Port Authority in the early days of its attempted reorganization.

The Debtor was authorized to pay the Port Authority by two Agreed Interim Cash Collateral Orders, both of which were entered after hearings, and were noticed to creditors and other parties in interest. The payments were not made until November 27, 2015, December 2,

2015, and December 3, 2015, and totaled $150,000, an amount that the Debtor and the Port Authority regarded as satisfying the Debtor's obligation under the Management Agreement. No objections were raised to the Cash Collateral Orders, nor were they appealed or subjected to a request for reconsideration at any time. The Trustee asserts that the characterization of the obligation to the Port Authority as a pre- or post-petition debt determines whether the bankruptcy court had the authority to approve the payments in the Cash Collateral Orders. The Panel finds that whether the Disputed Payments were for pre-petition or post-petition obligations is irrelevant. Instead, the Disputed Payments may not be avoided precisely because the Cash Collateral Orders "specifically authorized the Debtor to make the payment[s] at issue." *Eggmann v. Parker–Hannifin Corp.* (*In re PJM Enters. of Marion, Inc.*), Bankr. No. 08-40976, Adv. No. 09-04037, 2010 Bankr. LEXIS 28, at *8 (Bankr. S.D. Ill. Jan. 12, 2010) (citation omitted). The Trustee may not collaterally attack the Cash Collateral Orders through an adversary proceeding. Any objections based on the nature of the underlying debt being paid could and should have been timely raised in the Debtor's bankruptcy case. Accordingly, the Trustee is bound by the bankruptcy court's authorization of the payments, as a matter of law, and cannot seek to avoid the payments under 11 U.S.C. § 549.

## CONCLUSION

For the foregoing reasons, the Panel AFFIRMS the bankruptcy court's order granting the Port Authority's motion for summary judgment and denying the Trustee's cross-motion for summary judgment.